29 Cal.Rptr.3d 921 (2005)
130 Cal.App.4th 697
In re AARON R., a Person Coming Under the Juvenile Court Law.
City & County of San Francisco Social Services Department, Plaintiff and Respondent,
v.
Stephanie R. Defendant and Appellant;
Irie P., Movant and Appellant.
No. A107639.
Court of Appeal, First District, Division One.
June 23, 2005.
Rehearing Denied July 18, 2005.
Review Denied September 21, 2005.[*]
*922 Mario de Solenni, Esq., First District Appellate Project, for Defendant and Appellant.
M. Jeffrey Speno, Esq., Mitchell S. Griffin, Esq., San Francisco, Speno Law Offices, for Movant and Appellant.
Dennis J. Herrera, City Attorney, Kimiko Burton-Cruz, Joseph Sandoval, Deputy City Attorneys, for Plaintiff and Respondent.
*923 SWAGER, J.
In these dependency proceedings, the mother appeals from an order terminating parental rights and freeing the minor for adoption and the maternal grandmother appeals an order denying a petition under Welfare and Institutions Code section 388.[1] We affirm both orders.

PROCEDURAL BACKGROUND
The dependency proceedings concern the three children of Stephanie R., a single mother who was alleged to suffer from a mental illness that impaired her ability to care for the children and maintain a safe and sanitary home. The youngest of the children, Aaron R., was three months old when the dependency petition was filed in San Francisco Superior Court on October 27, 2000. The initial detention order filed October 30, 2000, placed Aaron in the custody of his maternal grandmother, Irie P., together with his older siblings, E. R., then age 10, and Earl, then age 11. On January 30, 2001, following jurisdictional and dispositional hearings, the court placed Aaron and E.R. with a foster parent, Michelle R., who resided in Stockton, California;[2] the oldest brother, Earl, was returned to Irie P.'s care on April 13, 2001.
On May 9, 2002, the court terminated reunification services for the mother and placed Aaron in the long-term foster care of Michelle, subject to six-month review. The Department of Human Services' (DHS) reports submitted for the hearings on October 22, 2002, and April 22, 2003, found that Aaron was thriving in Michelle's care, but reported problems associated with the mother's visitation of Aaron and his older brother, E.R. The status review report for the April hearing mentions that Michelle was considering adoption and that a home study was then in progress.
On June 20, 2003, the DHS filed an interim review report that stated that it had received an approved adoption home study for Michelle and recommended that the court schedule a section 366.26 implementation hearing to modify the permanent plan from long-term foster care to adoption. After several continuances, the court held a contested section 366.26 referral hearing on November 7, 2003, and set the case for a section 366.26 hearing the next year following receipt of a DHS report. The hearing was rescheduled and continued several times and ultimately held on August 5 and 13, 2004.
The 366.26 report filed by the DHS gave a highly favorable evaluation of Michelle as a prospective adoptive parent and reported that the DHS had suspended visits with the mother, Stephanie, because of difficulties encountered in past visits. In January and February 2004, the DHS arranged for Aaron and E.R. to visit their older brother Earl, who remained in the custody of Irie P.
In the year 2004, Irie P., became an active participant in the dependency proceedings. Michelle reported that the grandmother "called the children infrequently" and "appeared superficial in these contacts." Nevertheless, on April 27, 2004, Irie P. filed a petition under section 388 for modification of the previous order to provide for placement of Aaron and E.R. with her under a guardianship and *924 "ultimately adoption." The court summarily denied the petition at a hearing on April 28, 2004.
About this time, E.R. expressed a desire to live with his grandmother and, acceding to his request, the DHS placed him with Irie P. at the end of April 2004. On July 1, 2004, Irie P. filed a second petition requesting "transition of child [Aaron] from present foster care location to grandmother's [Irie P.'s] house."[3] The petition relied on the recent change in E. R.'s custody as a change of circumstances and argued that the preservation of sibling relationships called for placement of all three children with her. Shortly thereafter, E. R.'s attorney filed a supporting section 388 petition that opposed the proposed adoption of Aaron by Michelle and requested that Aaron be given the same placement as E.R. to preserve the sibling relationship.
Before the scheduled August hearing, Aaron's attorney filed an ex parte application for affirmation of Michelle's status as de facto parent of Aaron and suspension of sibling visitation between Aaron and his older brothers. The application noted that Aaron had been in Michelle's custody nearly all his life and asked that the determination of her de facto parent status be made on an expedited basis so that she could appear at the hearing. On July 27, 2004, Michelle herself requested to be declared Aaron's de facto parent. On July 30, 2004, the trial court granted Michelle's request for de facto parent status and appointed counsel to represent her at the upcoming hearing.
In the same ex parte application, Aaron's attorney represented that E.R. and Earl had been arrested twice for robbery since E.R. joined the home of Irie P. The application also described an unsuccessful visitation on June 23, 2004, in which E.R. had treated Aaron with indifference and engaged in a hurtful teasing behavior. A few days later, Aaron's attorney supplemented his application with the notes of the social worker regarding his observation of the sibling visitation. Acting on this information, the court suspended any further visitation between Aaron and E.R. until therapeutic visits could be arranged.
At the commencement of the hearing on August 5, 2004, the court summarily denied Irie P.'s section 388 petition and the portion of E. R.'s section 388 petition seeking a change in Aaron's placement. The court granted the portion of E. R.'s petition asking for permission to participate in the hearing for the purpose of addressing the significance of the sibling relationship. With regard to Irie P.'s participation, the court stated that she could be present at the hearing and express her views but would not be entitled to cross-examine witnesses since she was "technically" not a party.
The bulk of the hearing was devoted to cross-examining the DHS social workers, James Gould and Kossouth Bradford, who had been assigned to the cases of Aaron and E. R., respectively. The direct testimony of both social workers consisted of an offer of proof to which they expressed agreement. Bradford was most troubled by disruption of the sibling relationship but, like Gould, he thought that Aaron would benefit more from adoption by Michelle than from maintaining his relationship with E.R. Near the close of the hearing, Marchia P., the sister of the mother, Stephanie, made a brief statement to the court. Irie P. then addressed the court to *925 defend her qualifications to parent the boys.
In an order filed August 24, 2004, the trial court terminated the parental rights of Stephanie to Aaron and referred him to the DHS for adoption. Irie P. appeals the denial of her section 388 petition at the hearing on August 5, 2004. The mother, Stephanie, appeals the order filed August 24, 2004, terminating her parental rights to Aaron and ordering adoption as the permanent plan for the minor.

DISCUSSION

A. Grandmother's Standing
At the outset, we face the perplexing question of the grandmother's standing to appeal the order denying her petition under section 388. The right to appeal in dependency cases is governed by section 395, which provides: "A judgment in a proceeding under Section 300 may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment; ..." The term "judgment" in the statute refers to the dispositional order in a dependency proceeding. (In re Meranda P. (1997) 56 Cal. App.4th 1143, 1150, 65 Cal.Rptr.2d 913.) Subsequent orders subject to appeal as "orders after judgment" include orders denying section 388 petitions to modify an order of the juvenile court. Such orders are reviewed for abuse of discretion. (In re Stephanie M. (1994) 7 Cal.4th 295, 316-318, 27 Cal.Rptr.2d 595, 867 P.2d 706; In re Josiah S. (2002) 102 Cal.App.4th 403, 419, 125 Cal.Rptr.2d 413.)
The right of appeal, however, extends by statute only to a "party aggrieved" by the order appealed from. (Code Civ. Proc., § 902; In re Crystal J. (2001) 92 Cal. App.4th 186, 190-191, 111 Cal.Rptr.2d 646; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 181, p. 237.) The peculiar difficulty of the grandmother's appeal is to identify any prejudice that she suffered as a result of the denial of her section 388 petition. We construe the petition as being from the order filed May 9, 2002, placing Aaron in long-term foster care. She sought to change that order so as to place him in her care during the dependency proceedings, but filed the petition shortly before the permanency hearing that brought the dependency proceedings to a close. Whether a child is in the custody of a foster parent or relative during the dependency proceedings has no bearing on the issue of the parent's reunification rights or other parental rights. Hence, the modification of the custody order filed May 9, 2002, could not affect the order terminating the mother's reunification rights and setting a permanency hearing or the outcome of the permanency hearing itself. The change in custody could give the grandmother only a fleeting status as Aaron's caretaker before he is placed for adoption pursuant to the juvenile court's order at the permanency hearing.
Nevertheless, we conclude that the granting of the section 388 petition would give Irie P. the protected rights of a "relative caretaker" under section 366.26, subdivision (k). The subdivision provides: "the application of any person who, as a relative caretaker or foster parent, has cared for a dependent child for whom the court has approved a permanent plan for adoption ... shall be given preference with respect to that child over all other applications for adoptive placement if the agency making the placement determines that the child has substantial emotional ties to the relative caretaker or foster parent and removal from the relative caretaker or foster parent would be seriously detrimental to the child's emotional wellbeing." Subdivision (k) is the counterpart *926 of section 361.3, which applies to earlier stages of the dependency proceedings. Both statutes assure interested relatives that their applications for the child's custody "will be considered before a stranger's application." (In re Sarah S. (1996) 43 Cal.App.4th 274, 285, 50 Cal.Rptr.2d 503; Cesar V. v. Superior Court (2001) 91 Cal. App.4th 1023, 1032, 111 Cal.Rptr.2d 243.)
The DHS objects that Irie P. has no right to appeal under California Rules of Court, rule 1435(b), which provides: "In proceedings under section 300, the petitioner, child, and the parent or guardian each has the right to appeal from any judgment, order, or decree specified in section 395." Rule 1412(e), gives a child's custodian the right to petition for recognition as de facto parent with standing to participate as a party in dependency hearings. (In re Patricia L. (1992) 9 Cal. App.4th 61, 67, 11 Cal.Rptr.2d 631.) Irie P. did not seek recognition as a de facto parent; instead, the court conferred that status on the long-term foster parent, Michelle.
It is clear, however, that the Judicial Council does not have power to restrict the statutory right of appeal in promulgating rules of court. Indeed, we "may not draw any inference regarding legislative intent from rule 1435(b)." (In re Joel H. (1993) 19 Cal.App.4th 1185, 1195, 23 Cal.Rptr.2d 878.) If rule 1435 were construed to define a right of appeal more restrictive than the right of appeal afforded by section 395 and Code of Civil Procedure section 902, it would be "to that extent void." (In re Rachael C. (1991) 235 Cal.App.3d 1445, 1455, 1 Cal.Rptr.2d 473.)
We find support for our analysis in Cesar V. v. Superior Court, supra, 91 Cal. App.4th 1023, 111 Cal.Rptr.2d 243. The case concerned a writ petition to secure compliance with the relative placement preference of section 361.3. At a 12-month review hearing, the parties stipulated to the placement of two minor children with the paternal grandmother. The social services agency, however, soon determined that the grandmother was not a suitable placement and placed the children instead in a prospective adoptive home. When the trial court ruled that the agency acted within the scope of its statutory authority, the grandmother filed a petition for writ of mandate. The appellate court upheld her standing to seek review of her request for a relative placement: "[The grandmother], although not a party, has standing to seek appellate review of the denial of her request for placement under section 361.3. `[W]hether one has standing in a particular case generally revolves around the question whether that person has rights that may suffer some injury, actual or threatened.' [Citation.] [The grandmother's] separate interest in her relationship with Anthony, her grandson, is legally protected in section 361.3, which confers upon a grandparent the right to preferential consideration for placement. `[A]ny person having an interest recognized by law in the subject matter of the judgment, which interest is injuriously affected by the judgment' is considered a `party aggrieved' for purposes of appellate standing." (Id. at pp. 1034-1035, 111 Cal. Rptr.2d 243.)
Similarly, the grandmother here can assert an interest in her relationship with Aaron protected by section 366.26, subdivision (k). Since this statutory preference applies only to "caretaker relatives," the denial of her section 388 petition for a change of the child's custody with a foster parent had the effect of depriving her of the opportunity of claiming preferential consideration in the selection of an adoptive parent under this statute. The case of In re Miguel E. (2004) 120 Cal. App.4th 521, 15 Cal.Rptr.3d 530, on which *927 the DHS relies, is distinguishable. The minors there were removed from the grandparents' home following a hearing on a section 387 petition. The grandparents did not apply for de facto parent status at the hearing. Dismissing their appeal, the court held that the grandparents could not claim standing to appeal as de facto parents since they had failed to seek de facto parent status in the trial court. In contrast, the grandmother here did file a section 388 petition that would have given her a claim of preference under section 366.26, subdivision (k), if it had been granted. She now has standing to appeal the denial of this petition.

B. Denial of Section 388 Petition
Section 388 sets forth separate tests relating to a change of circumstance and the best interests of the child: "(a) Any parent or other person having an interest in a child who is a dependent child of the juvenile court ... may, upon grounds of change of circumstance or new evidence, petition the court ... for a hearing to change, modify, or set aside any order of court previously made.... [¶] ... [¶] (c) If it appears that the best interests of the child may be promoted by the proposed change of order, ... or termination of jurisdiction, the court shall order that a hearing be held...." Thus, "[i]t is not enough for a parent to show just a genuine change of circumstances under the statute. The parent must show that the undoing of the prior order would be in the best interests of the child." (In re Kimberly F. (1997) 56 Cal.App.4th 519, 529, 65 Cal.Rptr.2d 495.)
As stated in California Rules of Court, rule 1432(a), "[s]uch petitions are to be liberally construed in favor of granting a hearing to consider the parent's request. [Citations.] The parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing." (In re Marilyn H. (1993) 5 Cal.4th 295, 309-310, 19 Cal.Rptr.2d 544, 851 P.2d 826.) "`A "prima facie" showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited. [Citation.]' [Citation.]" (In re Josiah S., supra, 102 Cal.App.4th 403, 418, 125 Cal. Rptr.2d 413.)
"We review the juvenile court's summary denial of a section 388 petition for abuse of discretion." (In re Anthony W. (2001) 87 Cal.App.4th 246, 250, 104 Cal.Rptr.2d 422.) In general, "when a court has made a custody determination in a dependency proceeding, `"a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]."' [Citations.]" (In re Stephanie M., supra, 7 Cal.4th 295, 318, 27 Cal.Rptr.2d 595, 867 P.2d 706.)
We agree that the section 388 petition sets forth a change of circumstances by alleging that the middle sibling, E. R., was transferred to the grandmother's custody at the end of April 2004. Liberally construing the petition, we are also obliged to credit the allegation that the younger siblings had formed a "bond" that would be severed by Aaron's placement in a separate adoptive home. (See In re S.M. (2004) 118 Cal.App.4th 1108, 1121, 13 Cal. Rptr.3d 606; § 16002, subd. (a).) Nevertheless, we hold that the trial court acted within its discretion in ruling that the grandmother failed to make a prima facie case that a change in the custody order would be in the best interests of the child.
The record discloses that Aaron had lived with Irie P. for three months between the age of three months and six months. Since this brief period in his *928 infancy, he had spent his entire life in the home of the prospective adoptive parent, Michelle. The petition contains nothing to rebut the mass of evidence in the record indicating that Aaron was thriving under Michelle's care. The DHS reports indicated that he exceeded normal developmental milestones and was "bonded emotionally and physically to his foster mother." Again, the petition fails to make a showing of any significant contacts between Irie P., and the child. The only evidence of a relationship between them consisted of Irie P.'s conclusory allegation that she had "formed a bond with Aaron." Elsewhere the record disclosed infrequent contact between the grandmother and Aaron in the three and a half years he had been in Michelle's care. Finally, the conclusory allegations of the petition contain nothing assessing Aaron's needs and the comparative advantages of the two homes. Irie P. criticizes Michelle's conduct on certain occasions but does not attempt to establish her own superior qualifications to care for Aaron.
In short, we think that the trial court could reasonably infer that, however liberally construed, the petition fell short of establishing any realistic likelihood that the transfer of the custody of a healthy child to an unfamiliar home could be justified by the preservation of a bond with a sibling 10 years his senior. In reaching this conclusion, we do not need to rely on other evidence that the sibling had become directly involved in serious criminal activity shortly after coming within the care and custody of Irie P.
Since Irie P. appeals only from the denial of her section 388 petition, our conclusion that the court acted within its discretion in summarily denying the petition is dispositive of her appeal. We do not need to consider other issues presented by the record of the permanency hearing.

C. Indian Child Welfare Act
The mother, Stephanie, appeals on the sole ground that the trial court failed to make a determination as to whether Aaron was an Indian child within the meaning of the Indian Child Welfare Act of 1978. (25 U.S.C. § 1901 et seq.) Throughout the dependency proceedings, the DHS reports stated repeatedly that "the Indian Child Welfare Act does not apply." The only mention of Indian heritage is found in Irie P.'s statement to the court at the end of the permanency hearing. As noted earlier, the grandmother then said, "I am a member of the Black Native American Association in Fort Point [sic] Presidio Historical Association." The mother claims that this statement was enough to trigger an obligation of the court to inquire as to the child's membership in an Indian tribe.
The Indian Child Welfare Act provides that in dependency proceedings "where the court knows or has reason to know that an Indian child is involved, the party seeking the ... termination of parental rights to ... an Indian child shall notify ... the Indian child's tribe ... of the pending proceeding and of their right of intervention." (25 U.S.C. § 1912(a).) California Rules of Court, rule 1439, which implements ICWA's notice provisions in California courts, similarly provides for notice "whenever there is reason to believe the child may be an Indian child...." (Rule 1439(f)(5).) The rule defines "Indian child" as a person who "(A) is a member of an Indian tribe, or [¶] (B) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (Rule 1439(a)(1).) The term "Indian tribe" in turn is defined to mean those organized groups "eligible for services provided to Indians by the Secretary of the Interior...." (Rule 1439(a)(6); see also In *929 re Marinna J. (2001) 90 Cal.App.4th 731, 738, 109 Cal.Rptr.2d 267.)
We consider that the grandmother's brief allusion to her own membership in an historical association falls far short of giving the court reason to know that Aaron may be an Indian child. The historical association was not itself a tribe, and the record contains no information regarding its requirements of membership. We find that the case comes directly under the precedent of In re O.K. (2003) 106 Cal. App.4th 152, 130 Cal.Rptr.2d 276. There, the paternal grandmother stated at the section 366.26 hearing that "`the young man may have Indian in him.'" (In re O.K., supra, at p. 155, 130 Cal.Rptr.2d 276.) After a careful review of the circumstances that may give a juvenile court reason to believe that a child is an Indian child, the court held that the grandmother's statement "was too vague and speculative to give the juvenile court any reason to believe the minors might be Indian children." (Id. at p. 157, 130 Cal.Rptr.2d 276.)
We hold that the court had no obligation to make a further or additional inquiry in the absence of any evidence supporting a reasonable inference that the child might have Indian heritage. (In re Aaliyah G. (2003) 109 Cal.App.4th 939, 942, 135 Cal.Rptr.2d 680.)
The orders subject to appeal are affirmed.
We concur: STEIN, Acting P.J., and MARGULIES, J.
NOTES
[*] George, C.J., did not participate therein.
[1] All further statutory citations are to the Welfare and Institutions Code, unless otherwise indicated.
[2] Since mother and foster parent have the same last initial, we will hereinafter refer to them, to the grandmother, and to the three minors by first names or initials only. The court uses the first names and initials for clarity and no disrespect is intended.
[3] The petition does not identify a particular order requiring modification, but we think it can only be reasonably construed as seeking modification of the order filed May 9, 2002, placing Aaron in a foster home. In effect, it seeks a modification of this order so as to place the child with the grandmother.