[No. D047554. Fourth Dist., Div. One. June 5, 2006.]

In re SHIRLEY K., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
DANIEL K. et al., Defendants and Appellants.

**COUNSEL**

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendants and Appellants.

John J. Sansome, County Counsel, Susan Strom, Chief Deputy County Counsel, and Gary C. Seiser, Deputy County Counsel, for Plaintiff and Respondent.

Carl Fabian, under appointment by the Court of Appeal, for Minor.

## OPINION

**McINTYRE, J.**—Daniel K. and Shirley K., paternal grandparents and de facto parents (Grandparents) of Shirley K., appeal from the denial of their Welfare and Institutions Code section 388 petition seeking reinstatement of the child's placement in their home or, alternatively, liberal visitation. (All statutory references are to the Welfare and Institutions Code unless otherwise specified.) They contend the court abused its discretion when it found the San Diego County Health and Human Services Agency (the Agency) acted within its discretion in placing Shirley in a nonrelative adoptive placement and limiting Grandparents' visitation.

We hold that the court's findings and orders under section 388, including section 388 petitions filed after the termination of parental rights, are appealable under section 395 and writ procedures under section 366.28 do not apply. In addition, we hold the court's role in reviewing the Agency's action for abuse of discretion was not as limited as the trial court concluded. The trial court, in reviewing a child's placement after parental rights are terminated, must assess the Agency's posttermination placement within the context of the child's best interests. Accordingly, we reverse the orders of the court and remand with directions.

### FACTUAL AND PROCEDURAL BACKGROUND

Shirley K. was born in July 2003. She was removed from parental custody after postnatal testing showed she was exposed to methamphetamine. Her parents submitted to jurisdiction under section 300, subdivision (b). In September, when Shirley was six weeks old, she was placed with Grandparents.

Shirley's parents did not participate in reunification services and, in June 2004, the court terminated their parental rights. At that time, the social worker reported Grandparents were Shirley's psychological parents and she was "highly attached" to them. In January 2005, at the initial postpermanency review, the social worker reported Shirley was a happy baby who looked to Grandparents for her basic needs as well as for "unconditional love and attention." The social worker noted Grandparents were "more than cooperative" and anticipated the adoption would be final within six months.

At the end of March 2005, grandmother suspected her 14-year-old daughter, J.K., was using drugs and reported her to law enforcement. J.K. was detained by juvenile authorities and admitted using methamphetamine. Grandmother promptly informed the social worker of the family crisis.

On April 15, 2005, the Agency removed Shirley "in order to provide safety from substance abuse in the family." In addition to J.K.'s problems, the social worker believed "the placement was no longer viable due to alcohol issues of paternal grandfather." In October 2003, a social worker referred Grandparents to Al-Anon and Alcoholics Anonymous after learning grandfather drank from six to 10 beers a day.

Shirley was initially placed in foster care. The foster mother reported Shirley was very unhappy the first 10 days after removal. Shirley was "extremely happy" to see Grandparents and "extremely upset" when the one-hour supervised visits ended.

On May 18, 2005, Shirley was removed from the foster home and placed in a prospective adoptive home. The Agency granted Grandparents supervised visitation at the discretion of the prospective adoptive parents, however, the visits were discontinued in order to allow Shirley time to bond with the new family. Grandparents visited Shirley for one hour under the Agency's supervision at the end of June 2005 and again on her birthday in July 2005.

On May 31, 2005, over the Agency's objection, the court granted Grandparents' application as de facto parents. On June 10, 2005, Grandparents filed a section 388 modification petition requesting Shirley's return to their care or, alternatively, liberal, unsupervised visitation. The hearing on the section 388 petition was delayed to allow time for a court-ordered bonding study.

In July 2005, the prospective adoptive family informed the Agency they were unable to adopt Shirley. On August 5, Shirley was moved to a new adoptive home. The social worker reported Shirley "experienced separation anxiety, which is recurrent excessive distress when separated from her major attachment figures." She recommended Grandparents not visit Shirley for at least two months to allow her time to attach and bond with the new family.

The section 388 hearing was held on September 16 and 29 and November 2, 2005. The social worker testified the risk to Shirley in Grandparents' home included grandfather's alcohol use, his failure to follow through with an alcohol assessment, marital conflict, the presence of an aunt and her children in the home due to domestic violence, J.K.'s use of methamphetamine and Grandparents' failure to detect her drug use for several months.

Grandparents presented evidence they had taken remedial measures to address family substance abuse and other issues. They denied any marital conflict. Grandfather's substance abuse assessment showed he was not alcohol dependent. J.K. was invested in her recovery and was substance free.

Ellen Lacter, Ph.D., the psychologist conducting the bonding study, concluded Shirley was significantly attached to her Grandparents and would experience a psychologically damaging loss were "very significant" visitation not maintained.

In its remarks, the court noted both J.K. and grandfather had substance abuse issues and reasonable people could differ on what was in Shirley's best interests. Although supporting the placement with Grandparents "could have been a very good thing because baby Shirley was in that home for 20 months," the court found the Agency did not patently abuse its discretion when it determined there was not sufficient time to allow Grandparents to remedy the problems in their home. The court stated it was "irrelevant" whether the court agreed or did not agree with the Agency's decisions. Without determining whether Grandparents showed changed circumstances, the court denied their section 388 petition.

## DISCUSSION

### A

Grandparents contend the court erred in denying the section 388 petition because they showed changed circumstances and that the requested placement or visitation was in Shirley's best interests. They maintain the Agency abused its discretion in removing Shirley from, or refusing to return her to, their care. Minor's counsel joins in Grandparents' briefs and further asserts the record shows the social worker was unable to remain objective and therefore did not make sound decisions concerning Shirley's best interests.

The Agency argues the appeal should be dismissed as taken from an unappealable order under section 366.28. On the merits, the Agency contends the question before the court was "not what was best for the child, but rather whether the Agency had clearly abused its discretion in making its adoptive placement." The Agency maintains the court did not abuse its discretion when it found the Agency did not make an arbitrary, capricious, or patently absurd determination in choosing Shirley's posttermination placements.

### B

The Agency argues the Legislature in enacting section 366.28 intended appellate review of a posttermination placement order to be made by petition for extraordinary writ. Section 366.28 provides that a posttermination order by the court that a dependent child is to reside in, be retained in, or be removed from a specific placement is not appealable at any time unless a

petition for extraordinary writ was timely filed, substantively addressed the specific issues and was summarily denied or decided on the merits. (§ 366.28, subd. (b)(1)(A)–(C).)

■ The Agency concedes section 366.28 does not apply on its face to appellate review of a court's determination the Agency did not abuse its discretion in a posttermination placement decision or to a review of the court's action in a section 388 modification proceeding. The Agency argues section 366.28 should be interpreted to include such orders and asks us to ignore the clear but "inartfully drawn" language of the statute in favor of a judicial determination of legislative intent. We decline to rewrite the statute. " 'Ordinarily, if the statutory language is clear and unambiguous, there is no need for judicial construction.' [Citations.]" (*Hughes v. Bd. of Architectural Examiners* (1998) 17 Cal.4th 763, 775–776 [72 Cal.Rptr.2d 624, 952 P.2d 641].) ■ A denial of a section 388 petition is appealable under section 395. (Cal. Rules of Court, rule 1435(b); see *In re Aaron R.* (2005) 130 Cal.App.4th 697, 702–704 [29 Cal.Rptr.3d 921].)

### C

■ Under section 388, the petitioner must show by a preponderance of the evidence either changed circumstances or new evidence and that the proposed modification is in the best interests of the child. (§ 388; *In re Jasmon O.* (1994) 8 Cal.4th 398, 415–416 [33 Cal.Rptr.2d 85, 878 P.2d 1297].) The grant or denial of a section 388 petition is committed to the sound discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion is clearly established. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47 [82 Cal.Rptr.2d 426].) A trial court exceeds the limits of legal discretion by making an arbitrary, capricious or patently absurd determination. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318 [27 Cal.Rptr.2d 595, 867 P.2d 706].)

### D

■ Once a dependent child is freed for adoption, the agency to which the child is referred for adoption is responsible for the child's custody and supervision. The Agency is entitled to the exclusive care and control of the child at all times until a petition for adoption is granted. (§ 366.26, subd. (j); Fam. Code, § 8704; but see § 366.26, subd. (n)(1), added by Stats. 2005 ch. 640, § 6.5, eff. Jan. 1, 2006.) An interim or adoptive placement may be terminated at the Agency's discretion at any time before the petition for adoption is granted. (*Department of Social Services v. Superior Court* (1997) 58 Cal.App.4th 721, 732–733 [68 Cal.Rptr.2d 239] (*Department of Social Services*).)

The Agency's discretion regarding interim and adoptive placement is not unfettered. (*Department of Social Services, supra*, 58 Cal.App.4th at p. 724.) The court retains jurisdiction over the child to ensure the adoption is completed as expeditiously as possible and to determine the appropriateness of the placement. (*Ibid.*; see § 366.3, subd. (f)(12) [the court is required to "make appropriate orders to protect the stability of the child and to facilitate and expedite the permanent placement and adoption of the child."].) Thus the Agency does not have "carte blanche" to make placement decisions. (*Department of Social Services, supra*, 58 Cal.App.4th at p. 734.)

The court cannot substitute its independent judgment for that of the Agency; rather, the court is limited to reviewing whether the Agency "abused its discretion in placing the minor or in determining that the placement, once made, remains appropriate." (*Department of Social Services, supra*, 58 Cal.App.4th at p. 724.) "In other words, the court must assess whether [the Agency] acted arbitrarily and capriciously, *considering the minor's best interests.*" (*Id.* at p. 734, citing *In re Stephanie M., supra*, 7 Cal.4th at pp. 318–319, italics added.)

We reject the Agency's view the question before the trial court is "not what was best for the child, but rather whether the Agency had clearly abused its discretion is making its adoptive placement." The court ensures the Agency properly considers a child's best interests when making a posttermination placement, particularly when the child is removed from a long-term placement in which he or she has formed a strong and reciprocal bond with the caregiver. " 'When custody continues over a significant period, the child's need for continuity and stability assumes an increasingly important role.' " (*In re Stephanie M., supra*, 7 Cal.4th at p. 317, quoting *Burchard v. Garay* (1986) 42 Cal.3d 531, 538 [229 Cal.Rptr. 800, 724 P.2d 486], fn. omitted.)

Shirley had been in Grandparents' care for 20 months, effectively her entire life. She had a compelling interest in remaining with the only family she had ever known and with whom she had a reciprocal bonded relationship of unconditional love and affection. (See generally *In re Marilyn H.* (1993) 5 Cal.4th 295, 306 [19 Cal.Rptr.2d 544, 851 P.2d 826]; *Adoption of Kay C.* (1991) 228 Cal.App.3d 741, 749 [278 Cal.Rptr. 907]; *In re Arturo A.* (1992) 8 Cal.App.4th 229, 241 [10 Cal.Rptr.2d 131]; *Duchesne v. Sugarman* (2d Cir. 1977) 566 F.2d 817, 825 [a child has an interest in not being dislocated from the emotional attachments that derive from daily contact with his or her family].) In addition, Shirley had a fundamental interest in a stable, permanent placement free from abuse and neglect. (See *In re Dakota H.* (2005) 132 Cal.App.4th 212, 223 [33 Cal.Rptr.3d 337].)

■ Here, the court determined the Agency did not abuse its discretion when it chose not to delay permanency in order to "see if . . . the family . . . can respond to services." The court minimized its oversight role to review whether the Agency properly evaluated the placement in light of Shirley's best interests, calling its view "irrelevant." This was error. First, the court's determination of the child's best interest is not irrelevant. The ultimate responsibility for the well-being of a dependent child rests with the juvenile court. (§§ 202, 366.21, 366.22, 366.26, 366.3, 388; cf. *Department of Social Services, supra,* 58 Cal.App.4th at p. 724; see generally *In re Christopher I.* (2003) 106 Cal.App.4th 533, 557 [131 Cal.Rptr.2d 122] [the court has an equitable duty to protect the welfare of the children within its jurisdiction].) Second, Grandparents did not ask the court to delay permanency to allow a period of reunification services; rather, they requested the court determine whether their circumstances were sufficiently changed to permit Shirley's return or to permit liberal, unsupervised visitation. (§ 388.)

Despite Shirley's attachment to Grandparents, her interests in their bonded relationship and in stability, and the trauma caused by repeated removals, the record clearly shows the social worker refused to consider the remedial steps undertaken by Grandparents to resolve a family crisis and allow Shirley to safely remain in their care. From September 2003 until April 2005, the Agency gave no indication this was a marginal or problematic placement. Nevertheless, the social worker testified *she did not "want to see" any information from Grandparents* because the child had been placed in a different prospective adoptive home. In other words, despite Shirley's attachment to Grandparents, their ability to properly care for her over a long period of time, the strong nature of the bond between them, Grandparents' completion of the case plan, the short time before the anticipated adoption, the failure of one adoptive placement and the effect of repeated removals upon Shirley's emotional well-being, the Agency did not consider any information that might have shown Grandparents could safely resume caring for Shirley.

Minor's counsel strongly argues the social worker was not objective, a position supported by Dr. Lacter's observations. Dr. Lacter believed the social worker was unfairly biased against Grandparents. She based her opinion on discrepancies between the social worker's past and current observations of the grandparent/child relationship, the strong contrasts between the social worker's current observations of that relationship and her own, and the social worker's resistance to the bonding study as evidenced by her delay in scheduling it, disregard of Dr. Lacter's instructions and abrupt termination of the study at its midpoint.

The social worker admitted she did not want Shirley to be returned to Grandparents. The record shows negative factors in Grandparents' home were overstated. To cite only a few examples, the social worker identified Grandparents' "inept awareness" of J.K.'s drug use as a "critical" risk factor. In fact, grandmother recognized her daughter was behaving erratically, called the police, authorized a drug test, and complied with all requests for counseling, drug education and family participation in J.K.'s treatment. Grandfather's alcohol use was assessed as a current risk factor yet the Agency first learned of his drinking in October 2003, 18 months before Shirley was removed from his home. During that time, no concerns were noted about Shirley's safety in his care. The social worker's assessment of marital conflict was based on one conversation, which took place shortly before she removed Shirley from Grandparents' home. Grandmother wished she had provided Shirley's primary care instead of grandfather, and he responded with frustration.

In addition, the Agency minimized the detrimental impact of removal upon Shirley's emotional well-being. In August 2005, the social worker stated that Shirley was "tremendously malleable" in forming attachments with caregivers. However, in November 2005 she reported Shirley had developed "recurrent excessive distress when separated from her major attachment figures," indicating the social worker may have confused attachment with separation anxiety. Finally, we question the objectivity of the conclusions that Shirley's increased verbal abilities showed she was flourishing more in the new home than she had in Grandparents' home and that Shirley, in less than three months, had become more securely bonded to new caregivers than she had been to Grandparents after 20 months in their care.

We conclude the court abused its discretion when it underplayed its role in determining whether the Agency properly considered the child's best interest in making critically important posttermination placement decisions. The record supports the conclusion that the Agency abused its discretion when it refused to consider any information concerning Grandparents' remedial efforts in light of Shirley's significant interests in her bonded relationship with Grandparents, the stable, loving care they provided over an extended period of time, contact with her extended natural family, and the need for continuity, stability and security. (See § 366.21, subd. (f); *In re Marilyn H., supra*, 5 Cal.4th at p. 306; *In re Stephanie M., supra*, 7 Cal.4th at p. 317; *Duchesne v. Sugarman, supra*, 566 F.2d at p. 825.)

## DISPOSITION

The orders and findings of the trial court are reversed. The matter is remanded to the trial court to determine whether Shirley's interests are best served by an order returning her to Grandparents' care or, in the alternative, by a grant of liberal visitation.

McConnell, P. J., and O'Rourke, J., concurred.

A petition for a rehearing was denied June 21, 2006.