[No. D052632. Fourth Dist., Div. One. Aug. 26, 2008.]

In re SHANE G., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
L.K. et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I and II.

## COUNSEL

Appellate Defenders, Inc., and Maryann M. Milcetic for Defendant and Appellant L.K.

Appellate Defenders, Inc., and Kathleen Murphy Mallinger for Defendant and Appellant Shane G., Sr.

John J. Sansone, County Counsel, John E. Philips, Chief Deputy County Counsel, and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

Carl Fabian, under appointment by the Court of Appeal, for Minor.

## OPINION

**McCONNELL, P. J.**—L.K. and Shane G., Sr. (together, the parents), appeal a juvenile court judgment terminating their parental rights to their minor son Shane G. under Welfare and Institutions Code section 366.26.[1] The parents challenge the sufficiency of the evidence to support the court's finding the beneficial parent-child relationship and beneficial sibling relationship exceptions did not apply to preclude terminating their parental rights. They further contend reversal is required because the court failed to ensure proper notice under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.). We affirm the judgment.

[1] Statutory references are to the Welfare and Institutions Code unless otherwise specified.

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2006 five-year-old Shane became a dependent of the juvenile court under section 300, subdivision (b) and was removed from parental custody based on findings his parents left him with the paternal grandmother who could not care for him because she had health problems and no home of her own. L.K. had four other children[2] and a history with child protective services dating to 1994. She used methamphetamine and was often homeless and transient. She voluntarily gave legal guardianship of her three daughters to the maternal grandmother. Both parents had extensive criminal histories. Just before the jurisdiction hearing, L.K. was arrested on drug charges and was serving a one-year sentence for a prior burglary conviction.

Shane and his siblings visited L.K. at the jail, and after her release, at a park. Shane and his brother Anthony had been living in separate foster homes, but were later placed together. The parents had not complied with reunification services and stopped visiting the minors. L.K. was arrested again. At a 12-month hearing, the court terminated services and set a section 366.26 selection and implementation hearing for Shane.

The social worker assessed Shane as adoptable and recommended adoption as his permanent plan. L.K. remained incarcerated. Neither parent had had much contact with Shane for the past year. Shane and Anthony were moved to the foster home of Lisa U., who was interested in adopting them.

The San Diego County Health and Human Services Agency (Agency) filed a petition for modification under section 388 seeking to have the court terminate L.K.'s visits with Shane. The petition alleged L.K. had not visited Shane for many months due to her incarceration, Shane displayed severe anxiety and anger after a recent visit, and Shane's therapist believed visits were detrimental to him. The court granted the petition, finding there was a change in circumstances and it was in Shane's best interests to suspend visits. L.K. appealed, and in an unpublished opinion, this court affirmed the order granting the modification petition.

According to an addendum report, Anthony was moved to a new foster home because the social worker believed it was in Shane's best interests to

---

[2] Shane, Sr., is not the father of the other minors. These children, 13-year-old Danica, 11-year-old Jasmine, 10-year-old Amber and nine-year-old Anthony, are not subjects of this appeal.

live apart from him. Shane said he felt safer since Anthony moved, because he no longer worried about Anthony hitting him, twisting his arm or pushing him down the stairs. Lisa arranged visits between Shane and Anthony, and was amenable to Shane having contact with his sisters. By this time, Shane had been living with Lisa for nine months and referred to her as "mom." His academic performance had improved dramatically and he no longer had issues with enuresis, especially since Anthony moved out. Shane told Lisa he loved her and wanted to stay with her forever.

The social worker again recommended adoption for Shane, as he had no current relationship with his parents and terminating parental rights would not greatly harm him. Also, Shane had never lived with Anthony other than the 18 months they were placed in the same foster home. The social worker noted Shane experienced anxiety from prolonged contact with Anthony, and Shane deserved the opportunity to be raised in an environment where he felt safe and protected. Lisa was willing to maintain sibling contact.

At a contested selection and implementation hearing, social worker Deena Larks testified the parents had not seen Shane for seven months. Shane and Anthony continued to visit each other and Lisa was committed to continuing their contact. In Larks's opinion, Shane's anxiety and fear of living with Anthony adversely affected their bond. Larks believed the permanence, stability and sense of safety that adoption offered Shane outweighed any detriment caused by losing contact with Anthony. In any event, Lisa had already arranged for regular visits and telephone contact between Shane and Anthony. Similarly, the benefit of adoption for Shane outweighed the benefits of maintaining contact with his sisters, with whom he had never lived. Lisa was willing to foster contact between Shane and his sisters.

The parties stipulated to Shane's testimony as follows: Shane would be sad if he could no longer see Anthony. He wanted to see Anthony but not live with him. He would be sad if he could no longer see his sisters. The last time he remembered seeing them was when he was six years old. Shane wanted to see L.K. but "only a little bit until she goes to college." He had not seen Shane, Sr., in a long time. Shane wanted to see him, but only sometimes, until Shane, Sr., went to college.

The court addressed the applicability of ICWA. L.K. initially indicated she had no Native American heritage, but she later claimed she may have some

Comanche heritage. However, L.K. stated neither she nor the minors had ever been tribal members. The court acknowledged there had been a finding from 2005 that ICWA did not apply in this case. Although there was a letter in the file from the Comanche tribe stating it did not intend to intervene because the child (Shane's sibling Danica) did not have at least one-eighth Comanche heritage, the ICWA notices were not in the file. There was another finding in January 2006 that ICWA did not apply to any of the minors.

Agency argued ICWA notice was not required because there was no reason to believe, based on L.K.'s information, that Shane was a member of a tribe or eligible for membership in a tribe. The court continued the matter for Agency to provide copies of ICWA notices.

Several days later, Agency filed an addendum report with additional ICWA inquiry information. The social worker interviewed the maternal grandmother, who stated Shane's great-great-great-grandmother was a Comanche princess. The maternal grandmother said she never saw any ceremonial costumes and no one in the family ever participated in Indian ceremonies, lived on a reservation, attended an Indian school or received services from an Indian health clinic. Agency told the court the ICWA notices in the file concerned one of L.K.'s older children, but Agency had no ICWA notices that were sent as to Shane.

The parties stipulated to the testimony of Amber Robinson from the Comanche enrollment office, who would say the Comanche tribe requires any member to be at least one-eighth Comanche. The parties also stipulated the maternal grandmother would testify Shane has 1/64th Comanche heritage.

The court found Agency performed a reasonable ICWA inquiry and there was no reason to believe Shane was an Indian child as defined by federal law. Based on the addendum report, stipulated testimony, and letter from the Comanche tribe, ICWA did not apply. The court further found Shane was adoptable and none of the exceptions to adoption applied to preclude terminating parental rights.

## DISCUSSION

### I, II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III

L.K. contends the court erred by failing to ensure sufficient ICWA notice was sent to the Comanche tribe. Shane, Sr., joins in this argument.

#### A

■ ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes and families by establishing certain minimum federal standards in juvenile dependency cases. (*In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421 [285 Cal.Rptr. 507]; *In re Jullian B.* (2000) 82 Cal.App.4th 1337, 1344 [99 Cal.Rptr.2d 241].) ICWA defines an Indian child as any unmarried person who is under age 18 and is either (1) a member of an Indian tribe, or (2) eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4).)

■ When a court "knows or has reason to know that an Indian child is involved" in a juvenile dependency proceeding, a duty arises under ICWA to give the Indian child's tribe notice of the pending proceedings and its right to intervene. (25 U.S.C. § 1912(a); Welf. & Inst. Code, §§ 224.3, subd. (d), 290.1, subd. (f), 290.2, subd. (e), 291, subd. (g), 292, subd. (f), 293, subd. (g), 294, subd. (i), 295, subd. (g), 297, subd. (d); see *In re Aaliyah G.* (2003) 109 Cal.App.4th 939, 941 [135 Cal.Rptr.2d 680].) Alternatively, if there is insufficient reason to believe a child is an Indian child, notice need not be given. (*In re O.K.* (2003) 106 Cal.App.4th 152, 157 [130 Cal.Rptr.2d 276]; *In re Aaron R.* (2005) 130 Cal.App.4th 697, 707 [29 Cal.Rptr.3d 921].)

■ "The circumstances that may provide probable cause for the court to believe the child is an Indian child include, but are not limited to, the following: [¶] (A) A person having an interest in the child . . . informs the court or the county welfare agency . . . or provides information suggesting that the child is an Indian child; [¶] (B) The residence of the child, the child's parents, or an Indian custodian is in a predominantly Indian community; or [¶] (C) The child or the child's family has received services or benefits from a tribe or services that are available to Indians from tribes or the federal

---

*See footnote, *ante*, page 1532.

government, such as the Indian Health Service." (Cal. Rules of Court, former rule 5.664(d)(4); see § 224.3, subd. (b)(2), (3).) If these or other circumstances indicate a child may be an Indian child, the social worker must further inquire regarding the child's possible Indian status. Further inquiry includes interviewing the parents, Indian custodian, extended family members or any other person who can reasonably be expected to have information concerning the child's membership status or eligibility. (§ 224.3, subd. (c).) If the inquiry leads the social worker or the court to know or have reason to know an Indian child is involved, the social worker must provide notice. (§§ 224.3, subd. (d), 224.2, subd. (a)(5)(A)–(G).)

### B

Here, Agency's inquiry produced no information Shane was an Indian child. The social worker interviewed the maternal grandmother who indicated Shane's great-great-great-grandmother was a Comanche princess. However, no one in the family ever lived on a reservation, attended an Indian school, participated in Indian ceremonies or received services from an Indian health clinic. Most significantly, the evidence before the court showed the Comanche tribe requires a minimum blood quantum for membership that excludes Shane.[4] Thus, notice to the Comanche tribe was not required. (§ 224.3, subd. (d).)

■ Although there was some confusion regarding ICWA notices sent to the Comanche tribe as to Shane, and no notices or return receipts could be found, Agency performed a reasonable ICWA inquiry and determined there was no reason to believe Shane was an Indian child. Where, as here, the record is devoid of any evidence a child is an Indian child, reversing the judgment terminating parental rights for the sole purpose of sending notice to the tribe would serve only to delay permanency for a child such as Shane rather than further the important goals of and ensure the procedural safeguards intended by ICWA. Reversal is not required. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1431 [49 Cal.Rptr.3d 951] [parents of non-Indian children should not be permitted to cause additional unwarranted delay and hardship without any showing the interests of ICWA are implicated].)

---

[4] Agency received a letter from the Comanche tribe concerning Shane's half sibling Danica. The letter confirmed the required blood quantum for membership in the tribe and stated Danica was not eligible for membership. Because Comanche heritage was asserted through L.K., who is the mother of both Danica and Shane, the letter supports a finding Shane would be ineligible for membership in the Comanche tribe.

## DISPOSITION

The judgment is affirmed.

McDonald, J., and Irion, J., concurred.