Filed 7/31/13  In re F.C. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re F.C., a Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY BUREAU OF CHILDREN AND FAMILY SERVICES,<br>      Plaintiff and Respondent,<br>v.<br><br>P.C.,<br>      Defendant and Appellant. | A137378<br><br>(Contra Costa County<br>Super. Ct. No. J11-01597) |

In December 2012, the juvenile court entered an order in which it denied a petition filed by P.C. (Father) pursuant to Welfare and Institutions Code section 388,[1] terminated the parental rights of Father and T.B. (Mother), and selected a permanent plan of adoption for the minor F.C. (born November 2011).  Father challenges the order, arguing the court erred in denying his section 388 petition and in terminating his parental rights. We perceive no error and affirm the order.

## BACKGROUND

The minor was born testing positive for opiates and marijuana, requiring treatment for opiate withdrawal.  Shortly afterward, on November 29, 2011, the Contra Costa

---

[1] Further statutory references are to the Welfare and Institutions Code.

1

County Bureau of Children and Family Services (Bureau) initiated this proceeding under section 300, subdivision (b). The juvenile court ordered formal detention the next day. At the jurisdictional hearing a week later, the court sustained the following amended allegations under section 300, subdivision (b): Mother had a serious substance abuse problem and unaddressed mental health issues, each impairing her ability to care properly for the minor.

At the dispositional hearing, held January 6, 2012, the juvenile court adjudged the minor a dependent, ordered his removal pursuant to section 361, subdivision (c)(1), and ordered reunification services for both parents. Father's case plan called for him to complete parenting education, submit to testing for alcohol and drugs, engage in substance abuse treatment, complete a psychological assessment, undergo individual counseling, complete a psychotropic medication evaluation, and engage in medication monitoring. While the sustained jurisdictional allegations pertained only to Mother, Father agreed to comply with this case plan.[2]

In the report submitted at the six-month status review hearing, completed June 6, 2012, the assigned social worker expressed "disappoint[ment]" regarding both parents' lack of progress with their case plans. As to Father, the social worker reported he had not yet followed through with referrals for individual counseling and substance abuse treatment, had not yet begun a parenting class, had missed a number of alcohol/drug tests, and had not begun to test negative for marijuana until April. Father had only recently arranged for a psychological assessment, scheduled to occur near the end of June.

At the conclusion of the six-month hearing on June 18, the juvenile court concluded, in effect, that both parents had failed to make substantial progress in their court-ordered plans, and there was not a substantial probability that the minor could be

---

[2] Father was living with Mother from the initiation of the proceeding until April 2012, when he was asked to leave Mother's residence and began living with his grandparents. Thus, at the time of disposition and the adoption of his case plan, he was not eligible to assume custody of F.C. as a nonoffending parent, since he was not also a *noncustodial* parent. (§ 361.2, subd. (a).)

returned to their care if it ordered additional services. The court, therefore, ordered the termination of reunification services for both parents and set the matter for a hearing under section 366.26. (See § 366.21, subd. (e), 3d par.)

On October 16, 2012, Father filed a petition under section 388 to modify this order. He alleged he had since made significant progress with his case plan, and sought additional reunification services. In opposition to this petition, the Bureau urged that Father's recent efforts did not constitute "significant changes" so as to justify an order granting him additional services. In a memorandum prepared for the section 366.26 hearing, dated December 10, 2012, the Bureau recommended the termination of Father's and Mother's parental rights as to F.C., and a finding that it is likely F.C. will be adopted.

On December 14, 2012, at the conclusion of a combined hearing on Father's petition under section 388 and the selection of a permanent plan under section 366.26, the juvenile court denied the petition and terminated both parents' parental rights. Father's appeal followed. (See § 395.)

**DISCUSSION**

## I. *Father's Section 388 Petition*

Father contends the juvenile court abused its discretion in denying his petition under section 388. When seeking the modification of a prior order by petition under section 388, a parent must show not only a genuine change of circumstances, but also that the undoing of the prior order would be in the best interests of the minor. (*In re Aaron R.* (2005) 130 Cal.App.4th 697, 705–706.) Whether a prior order should be modified rests within the juvenile court's discretion, and its determination will not be disturbed on appeal absent a clear established abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) The appropriate test is whether the juvenile court exceeded the bounds of reason. When two or more facts may reasonably be deduced from the evidence, the reviewing court has no authority to substitute its decision for that of the juvenile court. (*Id.* at pp. 318–319.)

Father, pointing to the evidence he presented at the hearing, claims he did make a sufficient showing he had made significant changes after the termination of his services

by meeting his case plan requirements. Our review of that evidence indicates Father completed his psychological assessment soon after the six-month hearing, started weekly individual therapy in August 2012, had been seeing a psychiatrist about his psychotropic medications, and was living with his grandparents in a suitable residence. He started attending a parenting class in August, which he was due to complete December 18. Father had also visited F.C. regularly, and was seeking employment.

On this issue, the juvenile court concluded Father had not shown a sufficient change of circumstances—he had done "some things," but had not "substantially completed" his case plan. We observe there was no evidence Father addressed the case plan requirement of substance abuse treatment. In addition, because Father delayed many months before he addressed the other case plan components, his resulting efforts were incomplete or of relatively short duration by the time of the hearing. Father explained his delay by stating he did not understand his services might be limited to six months. (See § 366.21, subd. (e), 3d par.) Yet, the record shows the court adopted a finding that provided notice of this six-month limitation at the dispositional hearing. Also, the record does not show Father ever challenged the order terminating his services on grounds of improper notice. It is apparent to us that Father's showing of "significant changes" were more in the nature of "circumstances [that] were changing, rather than changed." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 49.) We conclude the juvenile court's assessment of Father's evidence did not exceed the bounds of reason.

With regard to the second prong of the showing required under section 388—that the modification of the prior order is in the minor's best interest—our review of the evidence indicates only Father's testimony that he and F.C. "have a bond[; F.C.] knows who I am." The assigned social worker, however, concluded otherwise in one of his reports submitted at the hearing, stating that, based on direct observation of several visits between Father and F.C., "[t]here does not appear to be [a] child-parent bond." The juvenile court noted it knew the social worker to be experienced and objective, and clearly indicated it found the social worker's opinion more credible. As mentioned above, when two or more facts may reasonably be deduced from the evidence, we have

no authority to substitute our decision for that of the juvenile court. (*In re Stephanie M., supra,* 7 Cal.4th at pp. 318–319.)

On appeal, Father reasons that, because F.C. was detained at birth, his ability to form a meaningful bond with the infant was essentially frustrated by the "minimal" or "limited visitation schedule" offered to him. He further suggests the juvenile court should have given greater consideration to the fact he did not share Mother's problems, which were the basis for jurisdiction, and the fact he had not caused problems in the home he shared with Mother and D.B. (an older half-sibling)[3] before F.C.'s birth. Father asserts simply: given his showing of "significant changes[,] it was in [F.C.'s] best interest that [Father] raise him."

We see no merit in these arguments. Once services have been terminated, a parent's interest in reunification is no longer paramount, and the focus shifts to the minor's need for permanency and stability. At this stage, the juvenile court, when considering a motion seeking a change in placement—such as Father's section 388 petition seeking F.C.'s eventual return to his custody—must recognize this shift of focus in determining the ultimate question of the minor's best interest. (*In re Stephanie M., supra,* 7 Cal.4th at p. 317.)

The Bureau's reports submitted at the hearing stated F.C. and his older sibling D.B. were adoptable, in that maternal relatives, who had been caring for both boys since mid-June, wanted to adopt them both. These prospective adoptive parents had been approved by an adoptive home study. Meanwhile, the two boys had developed a sibling relationship, which would be maintained and furthered by the prospective adoptive parents' adoption of both.

On the basis of this evidence, the juvenile court determined it was not in F.C.'s best interest to reinstate Father's services. We agree, and for the same reasons: reinstating services, based solely on Father's belated effort to comply with his case plan, would have disregarded the shift of focus to F.C.'s need for permanency and stability through

---

[3] D.B. is not Father's child and hence is not involved in this appeal.

adoption and would have interfered with F.C.'s prospective adoptive placement with a sibling with whom he had developed a relationship. We conclude without hesitation the court did not abuse its discretion in denying Father's section 388 petition because granting it would not be in F.C.'s best interest.

## II. *Termination of Father's Parental Rights*

Father claims the juvenile court erred in terminating his parental rights under the peculiar circumstances of his case—that jurisdiction was not based on Father's conduct, Father had demonstrated he was "ready and able" to care for F.C. appropriately in his grandparents' home, and that he had demonstrated his commitment to do so by his efforts to address his case plan. More specifically, Father suggests the juvenile court erred by failing to apply what is commonly called the "Beneficial Relationship" exception.[4]

Here, the juvenile court found by clear and convincing evidence it was likely F.C. would be adopted. As a general rule, when the court makes this finding at a section 366.26 hearing, it is required to terminate parental rights and order the minor to be placed for adoption. (§ 366.26, subd. (c)(1).) There are several statutory exceptions, including that of an existing beneficial relationship between the parent and the minor. That is, the court will not terminate parental rights if it "finds a compelling reason for determining that termination would be detrimental to the child [because] [t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)

---

[4] Father raises an additional ground in his reply brief, based on a recent decision by Division Five of this court. (*In re T.G.* (2013) 215 Cal.App.4th 1 (*In re T.G.*).) We conclude the due process violation found in that decision did not occur in this case. Here, Father may have been a nonoffending parent, but he was not a *noncustodial* parent either initially or at disposition. (See fn. 2, *ante.*) The juvenile court raised Father to presumed father status at the jurisdictional hearing. Subsequently, at the dispositional hearing, the court found, by clear and convincing evidence, that placement of F.C. with Father would be detrimental to the minor's safety, protection, or physical or emotional well being. This finding, under the foregoing facts, satisfies the due process requirement that Division Five found lacking under the facts in *In re T.G.* (See *In re T. G., supra,* 215 Cal.App.4th at pp. 20–22.)

The beneficial relationship exception is essentially an exception to be raised affirmatively and proved by a parent seeking to avoid the termination of his or her parental rights at a section 366.26 hearing. (See Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2013) Permanency Planning Procedures, § 2.171[5][b][i][A], pp. 2-513 to 2-514; see also *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350.) The record does not show that Father ever expressly raised or argued the application of the beneficial relationship exception at the section 366.26 hearing. On appeal, Father has not cited, nor have we discovered, any authority for the proposition that a juvenile court is required, on its own initiative, to consider whether any of the statutory exceptions apply to preclude termination of parental rights.

We note, additionally, Father's section 388 petition alleged—as the basis for determining that modification of the prior order would be in F.C.'s best interest—that he "has a bond with [F.C. and] it is in [F.C.'s] best interest to continue the bond he has with [Father] and for him to be raised by his father." In closing argument, Father's counsel argued the existence of this bond as a ground for deeming it "appropriate to grant Father's 388 [petition]," and thus vacate the section 366.26 hearing as to F.C. Accordingly, it is most reasonable to infer from the record that Father's evidence of his bond and visitation with F.C. was presented in support of his section 388 petition and not in support of an unvoiced claim that the beneficial relationship exception applied. Under these circumstances, Father has waived his claim and cannot raise for the first time on appeal the application of the beneficial relationship exception. (*In re Christopher B.* (1996) 43 Cal.App.4th 551, 558.)

In any event, as discussed above, the juvenile court concluded it would not be in F.C.'s best interest to reinstate Father's services and thus forego F.C.'s adoption. In doing so, the court gave express credit to the social worker's opinion there was no significant parent-child bond between Father and F.C. Even if we assume Father's evidence somehow invoked a claim that the beneficial relationship exception was applicable, it was clearly insufficient to provide a "compelling reason" for the court to determine that the termination of Father's parental rights would be detrimental to F.C.

(§ 366.26, subd. (c)(1)(B).)  The court was entitled to reject application of the beneficial relationship exception simply by finding the relationship maintained by Father during visitation did not benefit the child significantly enough to outweigh the strong preference for adoption.  (*In re Jasmine D., supra,* 78 Cal.App.4th at p. 1350.)  Such a finding is clearly implicit in the court's comments regarding F.C.'s best interest.

**DISPOSITION**

The order of December 14, 2012, is affirmed.

_____
Sepulveda, J.*

We concur:

_____
Margulies, Acting P. J.

_____
Banke, J.

_____

\* Retired Associate Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.