Filed 4/10/15  M.M. v. Superior Court CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| M.M.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>        Respondent;<br><br>SAN FRANCISCO HUMAN SERVICES AGENCY et al.,<br><br>        Real Parties in Interest. | A144263<br><br>(San Francisco City & County Super. Ct. No. JD1330443A) |

M.M. (mother) petitions for extraordinary writ review of a juvenile court order terminating reunification services and setting a selection and implementation hearing under Welfare and Institutions Code[1] section 366.26 regarding her son, Y.M.  Mother argues the juvenile court erred by finding that the San Francisco Human Services Agency (the Agency) provided her with reasonable reunification services.  Specifically, she contends the Agency did not do enough to facilitate her ability to visit Y.M. during a three-month period earlier in the proceedings.  We deny the petition.

BACKGROUND

In February 2013, the Agency filed a petition alleging that Y.M. (age 9), his older brother, J.M. (age 16), and three of his younger siblings were subject to the juvenile

---

[1]  All statutory references are to the Welfare and Institutions Code.

court's jurisdiction under section 300. The petition alleged that mother failed to protect J.M. against physical abuse by father, who, after accusing J.M. of stealing money, threw a knife at him, slammed his head against a wall, and further assaulted him. The petition also alleged that Y.M. and his younger siblings were at risk of physical and emotional harm due to J.M.'s abuse.

A detention report filed by the Agency later that month noted that the family had been involved in 19 previous referrals and 11 prior dependency cases and that two older daughters refused to return home in 2010 and 2011 upon the closure of their cases. At the detention hearing, the court ordered all five children to be detained in out-of-home placements pending a further hearing.

In a May addendum report to its March 2013 jurisdiction/disposition report, the Agency stated it had discovered mother coached Y.M. to fabricate a story to cover up the assault. Although the Agency did not believe continued out-of-home placement was warranted for Y.M. and his younger siblings, it recommended the parents complete their reunification requirements to "give them the skill set . . . to better deal with their children's quest for independence" and prevent "the use of physical force to discipline . . . their . . . children as they enter their teenage years." Under the reunification requirements specified in the jurisdiction/disposition report, the parents were ordered to successfully complete anger management therapy to help them understand how their conduct led to Agency involvement and removal of their children; complete parenting education focusing on reasonable expectations of a teenager and parenting without use of physical discipline; and undergo a psychological evaluation and accept recommended treatment to address their ability to adequately protect and parent the children. They were also ordered to meet the case plan service objectives such as interacting with the children without physical abuse or harm and demonstrating an ability to consistently, appropriately, and adequately parent the children.

The juvenile court adopted the Agency's recommendations at the May 2013 jurisdictional and dispositional hearing. The court sustained jurisdiction under section 300, subdivisions (b) and (j) as to all the children, continued J.M.'s placement in

foster care, and returned Y.M. and his younger siblings to the parents' care under the reunification requirements described in the disposition report.

Y.M. was subjected to abuse upon his return home. In early October 2013, the Agency filed a supplemental petition under section 387 alleging that mother had been arrested for child abuse after she stabbed Y.M. in his arm with a pencil and burned one of his fingers. Y.M. told the social worker that mother stabbed and punched him after "yelling and cussing" at him about getting ready for school. He stated he did not want to go home because "his mother told him she d[id]n't want him any[]more" and he was afraid his parents would "start hitting him" like they hit J.M. The social worker reported that the parents "ha[d] not grasped that physical force to discipline their children is not acceptable" and recommended Y.M.'s home placement be vacated. The court temporarily directed Y.M. to be under the care, custody, and control of the Agency, and at a subsequent hearing on October 29, 2013, it ordered father and siblings to have supervised therapeutic visits with Y.M. and suspended mother's visitation pending further order of the court. It appears the court suspended mother's visitation because on October 23 the social worker learned a protective order preventing mother from contacting Y.M. had issued.

In a six-month status-review report filed in late November, the Agency recommended that Y.M. remain in out-of-home placement, that the parents receive six more months of reunification services, and that the six-month status-review hearing trail the section 387 matter. Regarding visitation, the social worker stated she had submitted a request to arrange for supervised therapeutic visits between Y.M. and his parents and younger siblings. Mother's visits did not commence, however, due to the protective order that was still in place.

At a contested hearing in December, the juvenile court sustained the section 387 petition, continued services to mother in accordance with the case plan, kept Y.M. in foster care, specified supervised visitation for parents, and set a six-month status-review hearing on the section 300 petition for the following April. The criminal protective order

against mother was apparently modified shortly after the December hearing to allow her to have supervised visits with Y.M.

In March 2014, the Agency filed a section 388 petition asking the juvenile court to modify its prior order allowing mother to have supervised visits with Y.M. to provide that visitation between mother and Y.M. not occur until Y.M. came to feel "safe and comfortable with the idea of visiting his mother." In support of the petition, the social worker stated: "On several occasions, the undersigned has talked to [Y.M.] about visiting his mother. He has disclosed to the undersigned that he did not want to have visits with his mother because he was afraid. [Y.M.] has also disclosed this to the transportation workers . . . [taking him] to his weekly visit with his father and siblings." Y.M.'s individual therapist reported that when the subject of visitation with mother was broached with Y.M., his "body language suggested that he was afraid and worried. . . . [His] eyes would get big and he would be overly alerted [*sic*], by shaking his head and saying no . . . [and] would have startled responses when asked about visiting his mother." The Agency requested the change in visitation in the hope "that [when Y.M. was] emotionally ready to visit his mother, he would be comfortable with participating in the therapeutic visitation process." Following a hearing in late March, the juvenile court granted the section 388 petition and suspended mother's visits with Y.M. Mother did not appeal the order granting the petition.

In the six-month status-review report, the Agency recommended that Y.M.'s dependency status be renewed, that he remain in foster care, and that the matter be continued for a 12-month status review. The report stated that Y.M. had weekly supervised therapeutic visits with father and the younger siblings but "ha[d] refused to visit with his mother." It noted that the parents had completed some of their court-ordered services but continued to deny any role in physically abusing Y.M. or J.M. and had not contacted the psychologist to schedule a psychological evaluation as ordered by the juvenile court. At the May 2014 six-month status-review hearing, the court ordered that Y.M. remain in foster care. It found that the Agency had made reasonable efforts to

return Y.M. home and had offered reasonable services to the parents. Mother did not appeal this order either.

Four months later, the Agency filed a 12-month status-review report recommending that Y.M. remain in foster care, that mother's services be terminated, and that a section 366.26 hearing be set. At the time, Y.M. had not visited with mother since his placement in foster care almost a year earlier. The report noted that criminal proceedings against mother for assault, injury to a child, and child endangerment were still pending. It also reiterated that Y.M. still refused to visit with mother.

The 12-month status-review hearing originally scheduled for October was delayed until December 2014 and January 2015. At the hearing, Y.M. testified that he enjoyed visiting his younger siblings and father as long as the therapist was present. He stated that he did not feel safe going back to live with his parents and that he felt safe with his foster parents and wanted to stay with them. He could not recall ever asking to visit mother since he started living with his foster parents, did not want to visit her, and did not miss her.

Mother's trial counsel questioned social worker Rose Willis about the lack of visits between mother and Y.M. during the three months between late December 2013 (when the criminal protective order was modified to allow visits) and the granting of the section 388 petition in late March 2014 (when the juvenile court resuspended visits). Counsel asked about the "efforts . . . made by the Agency to start visitation between mother and Y.M." during that period. Willis replied that a request was submitted to Foster Care Mental Health (FCMH) for mother to be included in supervised visits, but Y.M. told Willis that he did not want to visit mother. Willis also testified that mother was required, as part of the case plan, to complete certain court-ordered services. She testified that four of those were complete, five were in progress, and one—a psychological evaluation—had not been started.

At the conclusion of the hearing, the juvenile court noted that there had been "lots of testimony about the situation with visitation. And the Court is aware that father has visited consistently, but . . . these are not just supervised visits, they are supervised

5

therapeutic visits, and they have not progressed from that point.  [¶]  And the Court also notes that visits with mother were suspended on an earlier occasion, I believe nine months ago, and that is where they have stayed.  And while the Court is aware that . . . [Y.M.] has not wanted to have visits with his mother, . . . we have information that the therapist was of the view that having visits with his mother was not in his best interest. . . .  [¶]  I will also note that mother has not completed all of her services. . . . And in this case . . . the psych eval[uation]s were a very important part of the services that were court[-]ordered, and neither parent has stepped forward to accomplish that, notwithstanding referrals that were made by the [Agency].  So I will at this time terminate reunification services for both mother and father."  Thereafter, the court set a section 366.26 hearing for June 3, 2015, and this writ petition followed.

## DISCUSSION

Mother challenges the juvenile court's finding at the 12-month status-review hearing that the Agency provided her with reasonable reunification services, "specifically with regard to the period in time between December 2013 and March 2014, when therapeutic visitation was ordered between" her and Y.M.  Mother argues that while "the social worker testified that she did make a FCMH referral for such visits and spoke regularly to [Y.M. and Y.M.]'s therapist about his readiness for such visits, there were additional options that might have been explored but were not."  Mother observes that the social worker did not attempt "to initiate any contact between the proposed therapeutic visit supervisor and . . . [Y.M.]'s therapist," and she speculates that a "dialogue between the two clinicians may have been beneficial in structuring separate visits, which may eventually have led to joint visits."

Mother's arguments are untimely because the issues of visitation and reunification services during the period between December 2013 and March 2014 were addressed in two earlier court orders.  In late March 2014, the juvenile court granted the Agency's section 388 petition on the basis that suspending mother's visits was in Y.M.'s best interests.  (§ 388, subd. (d); Cal. Rules of Court, rule 5.570(e)(1).)  And in late May 2014, at the conclusion of the six-month status-review hearing, the court determined that the

6

Agency made reasonable efforts to return Y.M. home and offered reasonable services to the parents. Both orders encompassed visitation and related services between December 2013 and March 2014, and both were final and immediately appealable. (*In re Aaron R.* (2005) 130 Cal.App.4th 697, 703 [ruling on section 388 petition is separately appealable order]; *In re Cicely L.* (1994) 28 Cal.App.4th 1697, 1705 [orders made at six-month status-review hearing are immediately appealable].) Accordingly, mother was obligated to raise her objections about visitation and services by appealing those two orders, and she cannot raise these issues for the first time in a challenge to the order setting the section 366.26 hearing. (*Steve J. v. Superior Court* (1995) 35 Cal.App.4th 798, 811 [father forfeited right to object to disposition and six-month status-review orders by failing to challenge them until appeal from 12-month status-review order]; see *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1151 ["an appellate court in a dependency proceeding may not inquire into the merits of a prior final appealable order on an appeal from a later appealable order"].)

In sum, because mother did not appeal either the section 388 or the six-month status-review order, and because the statutory time to file any such appeal has long expired, mother has waived any challenge to the reasonableness of services and visitation during the period from December 2013 to March 2014. (*In re Jesse W.* (2001) 93 Cal.App.4th 349, 355 ["The waiver rule as applied in dependency cases flows from section 395, under which the dispositional order is an appealable judgment, and all subsequent orders are directly appealable without limitation . . . [and] [a] consequence of section 395 is that an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order"].)

Mother does not articulate any other specific challenge to the juvenile court's finding that she was provided with reasonable reunification services. In any case, our review of the entire record shows substantial evidence supporting the court's finding that reasonable services were provided. (See *Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 598 [in evaluating challenge to reasonableness of reunification services provided, appellate court determines "whether substantial evidence supports the

[juvenile] court's finding, reviewing the evidence in a light most favorable to the prevailing party and indulging in all legitimate and reasonable inferences to uphold the court's ruling"].) Our review also shows that mother did not avail herself of all the services offered. At the time of the 12-month status-review hearing, which was held almost two years after the section 300 petition was filed, mother still had not completed the majority of her court-ordered reunification services, and in particular she had taken no steps to engage in a psychological evaluation to address her ability to adequately protect and parent her children. (See *In re Jonathan R.* (1989) 211 Cal.App.3d 1214, 1220 ["Reunification services are voluntary, and cannot be forced on an unwilling or indifferent parent"]; *In re Michael S.* (1987) 188 Cal.App.3d 1448, 1463, fn. 5 ["The requirement that reunification services be made available to help a parent overcome those problems which led to the dependency . . . is not a requirement that a social worker take the parent by the hand and escort him or her to and through classes or counseling sessions. A parent whose children have been adjudged dependents of the juvenile court is on notice of the conduct requiring such state intervention"].) In sum, mother has failed to show any error in the court's finding that she was provided with reasonable services.

## DISPOSITION

Mother's petition for an extraordinary writ is denied on the merits. The decision is final in this court immediately. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2)(A).) Mother's request for a stay of the section 366.26 hearing, currently scheduled for June 3, 2015, is denied as moot.

_____
Humes, P.J.

We concur:


_____
Margulies, J.


_____
Dondero, J.