Filed 10/19/15  In re J.S. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re J.S., et al., Persons Coming Under the Juvenile Court Law. | B263798<br><br>(Los Angeles County<br>Super. Ct. No. CK71573) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>M.S.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen Marpet, Juvenile Court Referee.  Affirmed.

Merrill L. Toole, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, Tyson B. Nelson, Deputy County Counsel for Plaintiff and Respondent.

Defendant and appellant M.S. (Mother) is the mother of five children, including J.S. who is an infant and the subject of this appeal. Mother has an extended history of substance abuse, and she admitted using methamphetamine while pregnant with J.S. In related proceedings,[1] the juvenile court terminated Mother's parental rights over three of J.S.'s elder siblings. We now consider whether the juvenile court erred when it denied Mother's section 388[2] petition and terminated her parental rights as to J.S.

**BACKGROUND**

Mother is the biological parent of three daughters and two sons, one of whom is J.S. Over the course of the past seven-plus years, all have been removed from Mother's custody and adjudicated dependents of the juvenile court. Before summarizing the relevant background concerning J.S., we briefly describe the related proceedings involving Mother's other children.

**A**

In February 2008, the Los Angeles County Department of Children and Family Services (the Department) filed a section 300 petition alleging that Mother's eldest daughter should be declared a dependent of the juvenile court because, among other things, Mother had a history of substance abuse and was a user of illegal drugs. The petition specifically alleged that Mother had a positive toxicology screen for methamphetamine on January 24, 2008. The juvenile court sustained the petition and removed the daughter from Mother's custody. Mother subsequently regained custody of her daughter, and the juvenile court terminated jurisdiction in 2010.

By 2013, Mother had three additional children. In May of that year, the Department filed a section 300 petition on behalf of all four children (J.S. had not yet

---

[1]     At Mother's request, we took judicial notice of the record of the related proceedings, Case No. B257361, by order dated July 8, 2015.

[2]     All undesignated statutory references are to the Welfare and Institutions Code.

2

been born).  The petition alleged Mother engaged in violent altercations with her male companion, who was the father of three of the children, in the children's presence.[3]  The petition also alleged that Mother failed to protect the children because she allowed the father—whom she knew had a history of methamphetamine abuse and who was then a current abuser of marijuana—to reside in the children's home and to have unlimited access to the children despite a court order permitting only monitored visitation.

The juvenile court sustained the section 300 petition and adjudicated all four children dependents of the court.  The court terminated jurisdiction over the eldest daughter with an order granting full custody to her father.  As to the other three children who had been placed in foster care, the court ordered reunification services for Mother, including individual counseling and random drug and alcohol testing once a week.

At a subsequent review hearing in December 2013, by which time Mother was already pregnant with J.S., the juvenile court found that Mother had not complied with the case plan.  Notably, the Department reported that she had failed to make contact with the social worker, she had failed to appear for drug and alcohol testing, and she had been arrested four times between August and October that year.  Two of the arrests were for being under the influence of methamphetamine, and Mother admitted methamphetamine use to the investigating officers when arrested for the other two offenses.  The juvenile court terminated reunification services for the three children and set a section 366.26 hearing.

**B**

Mother gave birth to J.S. in April 2014.  At the time, Mother was serving a custodial sentence for failing to attend domestic violence classes ordered as a condition of her probationary sentence in a criminal case.  While she was hospitalized to deliver J.S., Mother told hospital personnel that she smoked methamphetamine daily during her

---

[3]     Montebello Police arrested Mother in connection with an April 22, 2013, domestic violence incident alleged in the petition.  Montebello Police arrested Mother again for domestic violence when she hit father a month later, in May 2013.  The State prosecuted Mother on domestic violence charges and the court sentenced her to probation.

pregnancy until two months before J.S. was born, which was when she was arrested for violating her probation.[4] Hospital personnel notified the Department.

A Department social worker visited Mother in the hospital. According to a Department report documenting the visit, Mother admitted that her drug of choice was crystal methamphetamine. Mother told the social worker that she began using methamphetamine in 2007, stopped for about a year or a year-and-a-half in 2011, and started using again at the end of 2012, including in the first months of her pregnancies with two of J.S.'s elder siblings. Mother explained that she had taken substance abuse classes, enrolled in a sober living program, and enrolled in an inpatient substance abuse program, only to relapse later. Regarding J.S., Mother confirmed that she used crystal methamphetamine daily for the first five to six months of the pregnancy and she also admitted drinking alcohol for the "first couple months."

The Department filed a section 300 petition on April 23, 2014, alleging J.S. came within the jurisdiction of the juvenile court. The petition alleged Mother's substance abuse rendered her incapable of providing regular care for the child. (§ 300, subd. (b).) The petition further alleged Mother continued to use illegal drugs despite previously participating in a court-ordered substance abuse rehabilitation program. The petition notified Mother that the Department may recommend denial of family reunification services, which would result in immediate permanency planning for J.S. through termination of parental rights.

Mother was released from jail and appeared at a detention hearing for J.S. on the same day the petition was filed. The juvenile court ordered J.S. detained and vested temporary placement and custody of J.S. with the Department. On June 2, 2014, the Department filed an amended section 300 petition for J.S. that added allegations to reflect the updated status of proceedings involving his three siblings. By that time, the juvenile court had terminated Mother's parental rights over the siblings and ordered permanent

---

[4] Both J.S. and Mother were given toxicology screening tests in the hospital, and the tests were negative for methamphetamine.

placement services because of Mother's unresolved substance abuse issues and her failure to comply with court-ordered programs.

At a June 9, 2014, jurisdiction and disposition hearing on the amended J.S. petition, the juvenile court sustained the allegations that J.S. suffered, or there was a substantial risk he would suffer, serious physical harm or illness as a result of Mother's failure or inability to adequately supervise or protect him. The court declared J.S. a dependent of the court under section 300, subdivision (b) and continued his placement with the foster family that had cared for him since he was released from the hospital. As to disposition, the juvenile court found that Mother was not entitled to family reunification services under section 361.5, subdivision (b)(10), (11) and (13).[5] The juvenile court addressed Mother directly and explained: "The Court has a long history with you in my court being in our drug court program, as counsel indicated, ultimately relapsing. And you've been given another opportunity with your other children and relapsing. At this point, I cannot find . . . it's in this child's best interest to provide you with reunification services at this time." The court accordingly scheduled a 366.26 hearing to consider the permanent plan for J.S. and the termination of Mother's parental rights.

Mother filed three section 388 petitions in the months leading up to the section 366.26 hearing for J.S. Each of the petitions argued the juvenile court should revisit its order denying her reunification services because of changed circumstances, namely, Mother's efforts to seek drug abuse treatment and her then-ongoing participation in drug

---

[5]     Under subdivision (b)(10), a court need not provide reunification services to a parent who previously failed to reunify with the sibling of a dependent child if the parent has not made a reasonable effort to treat the problems that led to removal of the sibling. Subdivision (b)(11) similarly permits denial of reunification services where a parent had her parental rights over a sibling permanently severed and has not made reasonable efforts to treat the problem that led to that severance. Subdivision (b)(13) authorizes denial of reunification services to a parent with an extensive history of drug or alcohol abuse who failed or refused on at least two prior occasions to comply with a program of drug or alcohol treatment ordered in dependency court case plans.

tests, which were negative.[6] The juvenile court summarily denied Mother's first two petitions prior to the section 366.26 hearing, and Mother did not appeal from either denial. Mother filed the last of her petitions on March 27, 2015. In that petition, she stated she was attending drug counseling three times per week, participating in random drug tests, attending 12-step meetings, working with a sponsor, and receiving school and employment services. She claimed an order granting reunification services was in J.S.'s best interests because it would allow him to be with her, the biological mother.

The juvenile court denied the March 27 petition at the section 366.26 hearing for J.S. The court found Mother had not shown a sufficient change of circumstances to warrant a hearing on the petition and that changing its order to permit reunification services would not be in J.S.'s best interests. The juvenile court also terminated Mother's parental rights over J.S and rejected Mother's request for a contested hearing on the beneficial parent-child exception to termination. (§ 366.26, subd. (c)(1)(B)(i).) The relevant exchange between the juvenile court and counsel was as follows:

> THE COURT: The matter is here on calendar for selection implementation hearing and review of permanent plan. The court has read and considered the report today. Notice was given as required by law; publication to father, notice to mother. Recommendation is to go forward and terminate parental rights.
>
> Counsel, wish to be heard?
>
> [MOTHER'S ATTORNEY]: Yes, your Honor.
>
> Mother is making a request if the court will—to set the matter for contest to establish a—the parent-child bond exception under (c)(1)(B)(1).
>
> [CHILD'S ATTORNEY]: Your Honor, I'd ask—
>
> THE COURT: Go ahead.
>
> [CHILD'S ATTORNEY]: I'd ask the court, if the court's considering it, to demand an offer of proof. The court just denied her 388

---

[6] With one of her prior petitions, Mother submitted documentation of completed drug counseling programs and of 28 negative drug tests during the six-month period between July 2014 and January 2015.

6

on December 25, 2015.  Nothing would indicate that threshold could be met by mother.

THE COURT: [Mother], there is no evidence before the court that you have obtained the relevant contact with this child as a parent under (c)(1)(B)(1), so I'm going to deny your request to set the matter for contest.

And there is a 388 that you just filed recently which the court has read and considered and I'm denying the 388.  There's not sufficient change of circumstance.  It may be changing but it's not changed and—

[DEPARTMENT'S ATTORNEY]:  Is it also not in the minor's best interest?

THE COURT:  Not, clearly, in this minor's best interest, who has never been in your care and custody since the child was one day old.

[. . .]

So the court is ready to go forward.

Counsel.

[MOTHER'S ATTORNEY]:  Please note Mother's objection, your Honor, to termination of her parental rights.

The juvenile court found by clear and convincing evidence that it was likely J.S. would be adopted by the foster family that had cared for him since shortly after his birth. The court therefore ordered adoption as J.S.'s permanent plan.

## DISCUSSION

Mother argues the juvenile court should have held a hearing on her section 388 petition, rather than summarily denying it.  She also challenges the court's order that terminated her parental rights over J.S. without a contested hearing.  We review both claims of error under the abuse of discretion standard of review, except to the extent her second claim presents a factual issue; there, our review is for substantial evidence.  (*In re K.P.* (2012) 203 Cal.App.4th 614, 621-622; *In re Aaron R.* (2005) 130 Cal.App.4th 697, 705; *Ingrid E. v. Superior Court* (1999) 75 Cal.App.4th 751, 758-759.)

7

## A

Section 388 permits a parent (or other interested party) to petition the juvenile court "for a hearing to change, modify, or set aside any order of court previously made" in light of changed circumstances or new evidence. (§ 388, subd.(a)(1).) Mother was entitled to a hearing on her March 27, 2015, section 388 petition if she made a prima facie showing that "'(1) new evidence or changed circumstances exist[ed] and (2) the proposed change would promote the best interests of the child.'" (*In re Mary G.* (2007) 151 Cal.App.4th 184, 205.) The juvenile court found Mother had not made a prima facie showing on either score.

Although Mother's petition sought to set aside the court's earlier denial of reunification services based on the efforts she was making to address her substance abuse problem, the court found the petition did not present a sufficient change in circumstances; as the juvenile court put it, "It may be changing but it's not changed . . . ." The juvenile court was well familiar with Mother's substance abuse problems over many years and the relapses she suffered—including while pregnant with J.S. (*Ante* at p. 3.) Thus, while Mother's most recent efforts to seek treatment and stay sober are encouraging, we see no basis to conclude the juvenile court abused its discretion when it determined these efforts were insufficient indicia of changed circumstances to warrant a hearing. (E.g., *In re Mary G., supra*, 151 Cal.App.4th at pp. 205-206 [no prima facie change in circumstances, despite drug treatment and attendance at NA meetings, for mother who lost custody of three older children because of her drug abuse, which dated back 23 years]; *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423 [seven months of sobriety not changed circumstances]; *In re Casey D.* (1999) 70 Cal.App.4th 38, 44 [no prima facie case where social worker observed cyclical history of drug use over four-and-a-half years: parents would seek treatment to reunify only to relapse once child protection agency no longer involved].)

Moreover, the juvenile court also concluded that a hearing to consider reunification services for J.S., who had never been in Mother's care or custody since birth, would not be in the child's best interests. We do not disagree. By the time of

8

Mother's section 388 petition, the juvenile court's focus was appropriately on J.S.'s need for the permanency and stability that would come from adoption. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 464 [after reunification services terminated or never ordered, a parent's interest in the care, custody and companionship of the child is no longer paramount; focus shifts to needs of child for permanency and stability].) The record reflects that the family that had been responsible for taking J.S. to Regional Center therapy sessions and otherwise caring for him since birth was ready and willing to adopt him.[7] Thus, even assuming Mother had sufficiently shown changed circumstances, the juvenile court did not abuse its discretion when it summarily denied her section 388 petition. (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 641-642 [unless moving party makes a prima facie showing on both elements, changed circumstances and the child's best interests, section 388 petition may be denied without an evidentiary hearing]; *In re Aaron R., supra*, 130 Cal.App.4th at p. 706 [changed circumstances established, but no prima facie case where child spent nearly his entire life in home of prospective adoptive parent and was thriving under adoptive parent's care].)

**B**

Section 366.26 requires a juvenile court to make findings and orders for permanent placement of minors adjudged dependent children after consideration of relevant Department reports and other evidence the parties may present. (§ 366.26, subd. (a).) The statute provides that adoption of a dependent child, which requires termination of the biological parents' rights, is the preferred placement option. (§ 366.26, subd. (b)(1).) If the juvenile court finds by clear and convincing evidence that it is likely a child will be adopted, if the court made a previous finding to bypass reunification services under section 361.5, subdivision (b), and if there are no statutory exceptions to termination, the court must terminate parental rights. (§ 366.26, subd. (c)(1); *In re A.S.*

---

[7] According to Department reports, J.S. was doing well in the home of his caretakers, who had provided a loving and stable home and who were making sure all of J.S.'s needs were met. A social worker conducting a home visit observed J.S. bonded to his caretakers and vice versa.

(2009) 180 Cal.App.4th 351, 361; see also *In re K.C.* (2011) 52 Cal.4th 231, 236-237 [decision to terminate or bypass reunification services ordinarily constitutes a sufficient basis for terminating parental rights unless a court has compelling reasons under a statutory exception not to do so].)

Mother did not challenge the finding that it was likely J.S. would be adopted, nor the juvenile court's earlier decision to bypass providing reunification services pursuant to section 361.5.[8] But Mother sought to forestall the otherwise inevitable termination of parental rights by asking the juvenile court to set a contested hearing so she could attempt to establish the beneficial parent-child exception. (§ 366.26, subd. (c)(1)(B)(i) [court need not terminate parental rights if it finds the "parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship"]; see *In re C.F.* (2011) 193 Cal.App.4th 549, 553 [parent bears the burden to show termination of parental rights would be detrimental to child under one of the statutory exceptions].) The juvenile court did not set a contested hearing, and Mother argues the failure to do so violated her due process rights.

A parent has a right to due process in dependency proceedings, including the right to confront and cross-examine witnesses in particular circumstances. (*In re Ingrid E., supra*, 75 Cal.App.4th at pp. 756-757; *In re Jeanette V.* (1998) 68 Cal.App.4th 811, 816-817.) But due process "is a flexible concept which depends upon the circumstances and a balancing of various factors." (*In re Jeanette V., supra*, at p. 817 [citing *In re Sade C.* (1996) 13 Cal.4th 952, 992].) Thus, it is well established that a juvenile court need not hold a contested hearing to determine whether a section 366.26, subdivision (c) exception applies when a parent is asked and fails to make an adequate offer of proof. (*In re Tamika T.* (2002) 97 Cal.App.4th 1114, 1122; *In re Jeanette V., supra*, at p. 817; see also *In re Earl L.* (2004) 121 Cal.App.4th 1050, 1053.)

---

**8**    In Case No. B257361, Mother filed a Notice of Appeal from the juvenile court's order denying her reunification services for J.S. Mother filed a brief pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835 conceding there were no arguable issues. By order dated October 20, 2014, we dismissed the appeal as abandoned.

10

Mother contends the juvenile court did not allow her to make an offer of proof, and that the termination of her parental rights without a contested hearing was therefore improper. We do not read the record to so demonstrate. As quoted *ante* at page 7, the juvenile court gave counsel for Mother the opportunity to argue at the outset, and Mother made no offer of proof to justify her request for a contested hearing. When counsel for J.S. asked the court to demand such an offer, Mother's attorney did not interject with one. To be sure, the court at that point did state it would decline to set the matter for contest, but the court subsequently gave Mother an opportunity to respond; counsel simply noted her objection without making any further offer of proof. There is no doubt that the better practice under the circumstances would have been for the juvenile court itself to demand a specific offer of proof from counsel and to obtain one, or an express waiver of the right to present one, before proceeding. But the issue of an offer of proof had been raised, and counsel could have made or at least attempted to make such an offer. Having failed to do so, the juvenile court's decision to go forward without a contested hearing was not an abuse of discretion. (See *In re Jeanette V.*, *supra*, 68 Cal.App.4th at p. 817 [no error in juvenile court's implied finding that a deficient offer of proof did not require cross-examination of social workers to establish beneficial parent-child exception].)

Further, even if we read the record to show Mother did not have a chance to make an offer of proof, we are convinced the error was harmless. "To overcome the preference for adoption and avoid termination of the natural parent's rights, the parent must show that severing the natural parent-child relationship would deprive the child of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed." (*In re Angel B., supra*, 97 Cal.App.4th at p. 466.) When considering whether a parent-child relationship is beneficial, courts consider the age of the child, the portion of the child's life spent in the parent's custody, the positive or negative effect of interaction between the parent and child, and the child's particular needs. (*In re Jason J.* (2009) 175 Cal.App.4th 922, 937-938; *In re Angel B., supra*, at p. 467.)

Much of the evidence before the court on the relationship between J.S. and his foster family on the one hand, and J.S. and Mother on the other, was not only undisputed

but indisputable. J.S. was quite young at the time of the section 366.26 hearing on April 9, 2015—just over a year old. Holding a contested hearing would not have made him any older. There was also no disputing, contested hearing or not, that J.S. had been cared for his entire life by his foster family and had never been in Mother's custody. The juvenile court was also well aware of Mother's longstanding substance abuse problem—including her admission to daily methamphetamine use for much of her pregnancy with J.S.— which the court relied on to bypass providing reunification services and deny Mother's section 388 petitions. By the same token, the Department did not dispute the sufficiency of Mother's visitation. As the Department reports before the juvenile court stated, Mother visited J.S. consistently during monitored visitation twice a week beginning in May 2014, she was engaged and loving during the visits, and one social worker observed J.S. "to be very happy and comfortable in the presence of both [Mother and his foster family]."

"A biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent." (*In re Angel B., supra*, 97 Cal.App.4th at p. 466.) Rather, Mother had the burden to show that she had such a strong and beneficial relationship with J.S. that terminating her parental rights would be detrimental to J.S. and outweigh the benefit of a stable and permanent home that would come with adoption. (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1348-1349; *In re Casey D., supra*, 70 Cal.App.4th at p. 51.) On this record, the juvenile court was well within its discretion to terminate Mother's parental rights. Holding a contested hearing would not have resulted in a more favorable outcome under any standard of review. (*In re J.C.* (2014) 226 Cal.App.4th 503, 532 [beneficial relationship exception not shown for very young child (29 months) that spent entire life living apart from biological mother even though mother had pleasant contacts with child and had progressed to unmonitored visitation]; *In re K.P., supra*, 203 Cal.App.4th at pp. 622-623 [beneficial relationship exception not shown for parent who maintained regular visitation with child removed from custody when less than one month old but who did not progress

12

beyond once-per-week monitored visits]; *In re Jasmine D., supra*, at p. 1350 [benefit of stable, permanent adoptive home clearly outweighed benefit of continued relationship with parent who had successful visitation but made no steps toward overcoming problems that led to dependency]; *In re Casey D., supra*, at p. 51 [showing required to establish beneficial parent-child relationship "will be difficult to make in the situation, such as the one here, where the parents have essentially never had custody of the child nor advanced beyond supervised visitation"]; *In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1418-1419.)

## DISPOSITION

The juvenile court's orders denying Mother's section 388 petition and terminating her parental rights are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

TURNER, P.J.

MOSK, J.

13