Filed 7/7/16  In re M.K. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

In re M.K. et al., Persons Coming Under the Juvenile Court Law.

|  |  |
|---|---|
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E065337 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J258288, J258289 & J258290) |
| v. | OPINION |
| M.K. et al., |  |
| Defendants and Appellants. |  |

APPEAL from the Superior Court of San Bernardino County.  Annmarie G. Pace, Judge.  Affirmed in part; dismissed in part.

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant Mother.

Pamela Rae Tripp, under appointment by the Court of Appeal, for Defendant and Appellant Father.

1

Jean-Rene Basle, County Counsel, and Jamila Bayati, Deputy County Counsel, for Plaintiff and Respondent.

I

INTRODUCTION[1]

The subjects of this dependency appeal are two sisters and one brother, born in 2009, 2010, and 2014. San Bernardino County Children and Family Services (CFS) is the Respondent. Mother, joined by the alleged father,[2] appeals, challenging compliance with the Indian Child Welfare Act (25 U.S. § 1901 et seq., ICWA). We dismiss father's appeal for lack of standing.

The ICWA issue is raised for the first time on appeal in mother's opening brief. The record offers no credible evidence that the subject children are Indian children. Even if they are Indian children, they are being adopted by mother's older brother who shares the same heritage as mother. We affirm the judgment.

II

FACTUAL AND PROCEDURAL BACKGROUND

*A. Detention*

On August 22, 2014, CFS received a referral indicating mother smoked methamphetamine and failed to provide for the basic needs of the two daughters.

---

[1] All statutory references are to the Welfare and Institutions Code unless stated otherwise.

[2] The alleged father has no standing to appeal. (*In re Daniel M.* (2003) 110 Cal.App.4th 703, 707-709.)

2

Mother, born in 1989, had a learning disability, a history of marijuana use, depression, and domestic violence with father. Mother's apartment was uninhabitable. Mother was pregnant and tested positive for methamphetamine and marijuana at a medical appointment. CFS initiated a voluntary family maintenance (VFM) plan for mother.

In November 2014, the son was born, jaundiced and lethargic, and tested positive for marijuana. When mother brought the infant to the emergency room, he was gravely ill and was admitted due to his jaundice.

Mother began attending an outpatient drug treatment program but she was dropped from the program on January 2, 2015, for noncompliance. After she evaded CFS for three weeks, when mother finally brought the children to the CFS office, the boy was dirty and had a severe diaper rash; one daughter had a red right eye and a mark on her cheek; and the other had a bleeding sore on her lip. Mother claimed she was sober but refused to submit to a drug test. She admitted drinking that morning and taking a muscle relaxer to calm her nerves. CFS staff noted mother was fidgety and irate.

On January 12, 2015, CFS detained the siblings with their maternal uncle and aunt based on mother's failure to comply with her VFM plan. The section 300, subdivision (b), allegations were about parental substance abuse and the failure to meet the children's basic needs, medical neglect of the son, and father's criminal history. The subdivision (g) allegations were about father's unknown whereabouts and his ability to parent.[3]

---

[3] Other allegations included that parents had engaged in domestic violence and mother had a learning disability limiting her ability to care for the children. These were dismissed by agreement.

On January 15, 2015, the court detained the siblings with the maternal relatives, and set a jurisdiction/disposition (J/D) hearing for February 5, 2015. The February 5, 2015 J/D report indicated mother tested positive for marijuana during her three pregnancies, and positive for methamphetamine when pregnant with her son. She also received supplemental security income (SSI) for a learning disability, had never finished high school, and had no apparent employment history. Mother admitted she had smoked marijuana since age 16, but denied the allegations of substance abuse, claiming she may have tested positive because someone slipped her drugs. Her criminal history included arrests for obstruction of a police officer, burglary, and petty theft. She had a CPS history of general neglect referrals.

The parents were not married. Father's criminal history included drug charges, gang crime, and parole violations. Father did not provide for the children, and they never lived with him. Father's whereabouts were unknown.

The three siblings were comfortable in their placement with their relative caregivers. The boy's diaper rash had cleared, and his skin color improved.

After a successful mediation, the court sustained the section 300 petitions, removed the children from mother, ordered family reunification services for mother, found father was not entitled to services, and set a review hearing for August 2015.

B. *Six-Month Review*

The August 2015 six-month review hearing report recommended termination of mother's services and the setting of a section 366.26 with the plan of adoption. Mother had failed to communicate with CFS and refused to have therapy. Father had been

4

arrested for murder in the shooting death of a four-year-old boy in Highland. Meanwhile, the siblings were being well cared for in their relatives' home.

On August 27, 2015, mother attended the review hearing. The court ordered her to have a drug test and set a trial for September 30, 2015. Mother's test result was positive for amphetamines, and a subsequent test was positive for ethanol 40.

Mother testified at trial she had participated in an unknown number of parenting sessions. She had been dropped from services and was on a waiting list but she was not getting phone calls because her phone bill was unpaid. She had problems with transportation and drug testing. Mother admitted using marijuana but she claimed she quit using it when pregnant with her son. Her diabetes affected the drug tests.

After argument, the court found mother had failed to make progress in her case plan, so the court terminated family reunification services and set a Notice Review Hearing, and a section 366.26 hearing for January 28, 2016. The court advised mother of her writ rights.

On October 16, 2015, father was personally served written notice of the section 366.26 hearing. The court continued the Notice Review Hearing to have father transported to court. Father was present in custody at that hearing. He was appointed counsel and arraigned on the petition. The court advised father that CFS was recommending termination of parental rights and adoption at the section 366.26 hearing, and advised father of his writ rights, and gave oral notice of the section 366.26 hearing. No writ petitions were filed after the setting of the section 366.26 hearing.

*C. Section 366.26 Hearing and Section 388 Petition*

In January 2016, CFS recommended termination of parental rights to permit adoption by the maternal aunt and uncle. In January 2016, mother gave birth to a girl, who was immediately removed from mother. The relative caregivers declined placement of this newest sibling. Since their placement in January 2015, the three subject children had adjusted and improved.

Mother had visited only twice in the reporting period but she also attended family functions where the children were present. The maternal relatives wanted to adopt the siblings, who were attached to their caretakers and their cousins. The maternal uncle is mother's older brother. Therefore, mother and the maternal uncle have the same claim, if any, to Indian heritage. The maternal uncle and his wife were high school sweethearts who married in 2005. Both are in their early 30's, employed as a security guard and at United Parcel Service. They have no reported medical issues, criminal or Child Protection Services history. They have two biological sons, ages 9 and 12, who receive good grades in school and enjoy the siblings. The maternal relatives practice love, acceptance and structure, and teach family values and respect for all.

On January 28, 2016, mother filed a section 388 petition, asking for return of the children or reinstatement of family reunification services and liberalized visits. Mother had participated in a parenting course and other programs, and received positive feedback. The petition stated the siblings were attached to Mother. Mother reportedly began substance abuse treatment on October 14, 2015. She had provided five negative drug tests.

6

In response, CFS recommended denial of mother's section 388 petition because mother had failed to participate in therapy and a 12-step program. Mother had trouble controlling the children at supervised visits, and the children easily separated from her.

On February 3, 2016, the court found the petition did not establish a prima facie case. The court held the section 366.26 hearing. Mother testified that during visits, she and the children read and played together, and the children called her "Mom" and resisted leaving. She objected to termination of parental rights but she admitted the children were comfortable in their placement. The court found the children adoptable, terminated parental rights, and advised their parents of their appellate rights.

*D. ICWA Notice*

The Indian Child Inquiry Attachments, ICWA-010(A), filed with the original dependency petitions indicated mother stated the children may have Indian ancestry, either Cherokee or "Hoomaui."

At the detention hearing, mother filed a Parental Notification of Indian Status form, ICWA-020, indicating her tribal affiliation was "Chekrroe/Hoomaui." She told the court she believed her grandparents were "Cherokee Indian" and her father's side of the family was "Hooweeke" or "Hoomau."

On January 22, 2015, the ICWA clerk mailed the Notice of Child Custody Proceeding for Indian Child forms, ICWA-030, by certified mail, noticing the federally-recognized Cherokee tribes, the Bureau of Indian Affairs (BIA), the Secretary of the Interior, and mother of the jurisdictional/dispositional hearing set for February 5, 2015. The notice identified the children and their parents, their respective dates of birth and

7

current and former addresses. The notice stated the Cherokee heritage stemmed from mother's family, and "Mother also claims Humaui and Hookeekei - not Federally recognized." There was no other information for father.

The maternal grandmother was identified with her current and partial former address, as well as her birthdate and location. The maternal grandfather was also listed with no current address and a former address as San Bernardino, California. Two maternal great-grandmothers were listed by current but not former addresses. The "Humaui" or "Hookeekei" heritage reportedly stemmed from one maternal great-grandmother, and the Cherokee heritage stemmed from another such relative; the latter died in December 2014 in San Bernardino. Two maternal great-grandfathers were named but were reported as deceased in 2013. Their former addresses were listed. One was born on "01/03/??" in Baton Rouge, Louisiana.

In February 2015, CFS noted that mother had asserted in an interview that she might have Cherokee ancestry and she provided as much family information as she could about Indian heritage. On February 24, 2015, CFS filed a second ICWA declaration of due diligence, indicating the three federally-recognized Cherokee tribes, the BIA, and Secretary of the Interior, had received the ICWA-030s by certified mail. Correspondence from the Cherokee Nation and from the United Keetoowah Band of Cherokee Indians indicated the children or relatives could not be found as current enrolled members.

On April 2, 2015, CFS filed a "Final ICWA Declaration of Due Diligence," advising that 65 days had passed since the tribes, BIA and Secretary of Interior had been notified of proceedings. Correspondence from the Eastern Band of Cherokee Indians,

8

dated March 3, 2015, stated the children were not registered or eligible to register. No affirmative response of tribal membership was received, and, hence, ICWA did not apply. The court found ICWA did not apply. The attorneys of record posed no objections.

On November 24, 2015, at the six-month review hearing, father confirmed he had no Indian ancestry. The January 2016 section 366.26 report indicated ICWA did not apply. No party raised ICWA arguments in the trial court or through writ proceedings.

III

ICWA

Mother claims that the ICWA notice was inadequate in that the information, as provided by mother to CFS, proved to be insufficient to determine possible Indian membership. In particular, mother argues CFS should have noticed the Hualapai or Havasupai tribes of Arizona because their names are somewhat similar to the one to which mother believed she had paternal tribal ties. The various spellings were "Hoomau," "Hooweeke," "Hoomaui," "Humaui," and "Hookeekei." Respondent notes that the United Houma Nation is a state-recognized, but not federal, Indian tribe in Louisiana where the children's great-grandfather was born. Mother also argues the information she provided was not detailed enough to allow a determination of Cherokee heritage.

The ICWA is designed to protect the interests of the Indian child and promote the stability and security of Indian tribes and families. (*In re Karla C.* (2003) 113 Cal.App.4th 166, 173-174.) It sets forth the manner in which a tribe may obtain jurisdiction over child custody proceedings involving an "Indian child." ICWA defines

9

an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).)

ICWA notice requirements ensure a tribe has the opportunity to assert its rights under the statute. (*In re C.D.* (2003) 110 Cal.App.4th 214, 222.) Substantial compliance with ICWA noticing requirements is sufficient for this court to affirm the judgment. (*In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421-1422.) Strictly proper ICWA notice is not required to withstand appellate challenge. (*In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1404.) A trial court's findings as to whether proper notice was given and whether ICWA applies are reviewed for substantial evidence. (*In re E.W.* (2009) 170 Cal.App.4th 396, 403-404; *In re J.T.* (2007) 154 Cal.App.4th 986, 991.)

In a dependency, "where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.2, subd. (a).) Notice of the proceedings must be sent to all tribes of which the child may be a member or eligible for membership. (Cal. Rules of Court, rule 5.481(b)(1); Welf. & Inst. Code, § 224.2, subd. (a)(3).)

California Rules of Court, rule 5.482(b) states: "Proof of notice filed with the court must include *Notice of Child Custody Proceedings for Indian Child* (form ICWA-030), return receipts, and any responses received from the Bureau of Indian Affairs and

10

tribes." The social worker has a duty to inquire about and obtain, if possible, all of the information about a child's family history. (*In re S.M.* (2004) 118 Cal.App.4th 1108, 1116-1117.) The duty of inquiry, however, extends to the parents, not grandparents or extended family. (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1161.) The ICWA applies to federally recognized tribes; notice to non-federally recognized tribes is not required. (25 U.S.C. § 1903(8); *In re K.P.* (2009) 175 Cal.App.4th 1, 5.) ICWA noticing provisions are triggered where the juvenile court knows or has reason to know that an Indian child is involved. (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 469.) Where the tribe of heritage named by the parent is not on the list of federally recognized tribes, a court has no reason to know a child is an Indian child. (*In re K.P.,* at p. 5.)

Here mother claimed she might have Cherokee ancestry and other tribal ancestry using various spellings of an "H" tribe, none of which are federal tribes. The ICWA-030s were substantially complete, particularly on the maternal side, from which the alleged Indian heritage was derived. CFS complied with the California Rules of Court, rule 5.482 requirements for ICWA noticing. In the court below, mother and her attorney never clarified which was the "H" tribe with which mother claimed affiliation.[4] Nor did they present evidence at trial or an offer of proof on appeal that mother may have been referring to the Hualapai or Havasupai tribes. Instead, CFS correctly stated the "H" tribes, which mother named, were not federally-recognized tribes so the ICWA did not apply. (25 U.S.C. § 1903(8); *In re Wanomi P.* (1989) 216 Cal.App.3d 156, 166-167.)

---

**4** The Federal Register lists at least 10 federally-recognized tribes in the contiguous 48 United States commencing with the letter "H," and several more in Alaska.

A parent's failure to name a federally-recognized tribe does not mean there is a need for further inquiry or noticing of that tribe. (*In re Aaron R.* (2005) 130 Cal.App.4th 697, 707.) In a case where a mother alleged on appeal that she was a member of Colfax/Todd's Valley Consolidated Tribe, the agency did not conduct ICWA noticing, because the tribe was not federally recognized. The parents argued on appeal that the agency failed to provide proper ICWA notice, by not investigating whether that band was affiliated with the Miwok or Maidu tribes and potentially affiliated with federally-recognized tribes. (*In re K.P., supra,* 175 Cal.App.4th at pp. 4-5.) The appellate court held ICWA did not apply to a non-federally recognized tribe and no notice was required. (*Id.* at p. 6.) The appellate court also rejected new information on appeal, which had not been presented in the juvenile court, and noted the parents cited no authority requiring the agency to investigate possible federal affiliation of all tribes. (*Id.* at p. 5.)

Mother claims that CFS should have sent notice to the Hualapai or Havasupai tribes because of the similarity of those names to the other "H" names used by mother. However, CFS would have to engage in sheer speculation because no evidence in the record suggests mother had tribal ties with the Arizona tribes. Even if mother had tried to name the United Houma Nation based on a maternal relative born in Baton Rouge, Louisiana, that tribe is a non-federally recognized tribe.[5]

---

[5] The United Houma Nation's internet website—www.unitedhoumanation.org—describes that tribe's efforts to achieve federal recognition, hindered by a lack of funding and legal representation.

12

Mother also argues CFS did not provide maiden names and birth dates for certain relatives and should have obtained more information. However, the ICWA clerk submitted sworn declarations attesting she had provided the information CFS had received about relatives. For example, the maternal great-grandfather, a remote relative, was included on the form with his birthplace and the month and day of his birth. CFS was not required to inquire repeatedly about mother's claim of Indian heritage once it had obtained all the information mother could provide. As to the paternal heritage, the court did confirm father had no apparent Indian heritage.

After the three federally-recognized Cherokee tribes determined the children were not Indian children, as indicated in tribal correspondence, the court found ICWA did not apply. No attorney objected to that finding, which was based on substantial evidence. (*In re E.W., supra*, 170 Cal.App.4th at pp. 403-404.)

On appeal, mother points to no evidence in the record indicating any family member was a member of a federally-recognized tribe, or eligible for membership, and no offer of proof is made to this court. (25 U.S.C. § 1903(4); Code of Civ. Proc., § 909.) Mother had no additional ICWA information. Even if ICWA applied, the children are being adopted by mother's older brother, preserving any Indian relationship. Therefore, any ICWA noticing deficiencies constituted harmless error. (*In re Cheyanne F.* (2008) 164 Cal.App.4th 571, 577-579.)

Furthermore, although the parents may not have been able to waive or forfeit ICWA notice requirements, because of the dearth of ICWA evidence, there is no need to address the issue of waiver or forfeiture. (*Dwayne P. v. Superior Court* (2002) 103

13

Cal.App.4th 247, 257; *In re Marinna J.* (2001) 90 Cal.App.4th 731, 739.) At some point, there must be finality in the ICWA noticing process. (*In re Z.W.* (2011) 194 Cal.App.4th 54, 67.) "Parents cannot spring the matter for the first time on appeal without at least showing their hands." (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1431.)

## IV

## DISPOSITION

We dismiss father's appeal for lack of standing. Mother's claims wholly lack merit. We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.