Filed 5/5/21  In re J.A. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re J.A., a Person Coming Under the Juvenile Court Law. | |
| | D078238 |
| IMPERIAL COUNTY DEPARTMENT OF SOCIAL SERVICES, | |
| Plaintiff and Respondent, | (Super. Ct. No. JJP000472) |
| v. | |
| C.A., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Imperial County, William D. Lehman, Judge.  Affirmed.

Michelle L. Jarvis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kelly Ranasinghe, Deputy County Counsel, for Plaintiff and Respondent.

INTRODUCTION

C.A. (Mother) appeals from juvenile court orders denying her petition under Welfare and Institutions Code section 388 for return of her minor son, J.A., and terminating her parental rights.[1] She argues the juvenile court abused its discretion by denying her section 388 petition, and if we reverse, we must reverse the termination order as well. Her notice of appeal identified only the termination order, but she contends we should apply liberal construal to consider the section 388 petition too. The Imperial County Department of Social Services (the Department) concedes we should consider the section 388 petition, but disagrees the juvenile court abused its discretion. We consider the entire appeal, conclude there is no basis for reversal, and affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

J.A. was born in early December 2018, and he and Mother tested positive for amphetamine and methamphetamine. When he was three days old, the Department took him into protective custody and placed him in the foster home of O. and L.S. The Department then filed a dependency petition on J.A.'s behalf, alleging in pertinent part that he was at risk of serious physical harm due to Mother's substance abuse. (§ 300, subd. (b).) The petition alleged Mother admitted using methamphetamine while pregnant.

The juvenile court detained J.A. and ordered weekly visitation, and later took jurisdiction. According to the Department reports, Mother said she began using methamphetamine when her grandmother died in 2004. She initially denied a history of mental health problems, but later disclosed she

_____

[1] Further statutory references are to the Welfare and Institutions Code unless noted. J.A.'s father is not a party to this appeal.

was diagnosed with depression, anxiety, and bipolar disorder in the past, was prescribed Seroquel, and once took a "bottle of antidepressants." She also said she was homeless and unemployed. Her other children lived with the maternal grandmother, who became their guardian in 2015. By early February 2019, Mother had not visited with J.A. At the disposition hearing that month, she appeared in court for the first time. The court ordered reunification services, and set a six month review hearing. The court told Mother that failure to reunify with J.A. would lead to termination of services and could result in adoption, and "you have six months from today's date to reunify . . . ."

Mother initially made little progress. Her case plan required her to complete substance abuse treatment, and apply those techniques to "develop a relapse prevention plan . . . ." She also had to take a parenting program, participate in a psychological assessment and any services deemed necessary, and attend individual counseling if recommended. She did not participate in services, and the social worker sent non-compliance letters. In July 2019, Mother enrolled in a substance abuse program, left three days later due to "severe anxiety," then reenrolled and left again. She entered and left a second substance abuse program as well. Mother also did not visit J.A. during this period. The Department recommended termination of services.

At the six month review hearing in August 2019, the juvenile court terminated services and set a section 366.26 hearing. Mother enrolled in another program, Victory Outreach; she had three visits with J.A. between November 2019 and January 2020, and he had visits with his maternal grandfather and siblings. Meanwhile, J.A. had a strong attachment to his foster family and was "thriving."

3

The Department recommended terminating parental rights and setting a permanent plan of adoption. The Court Appointed Special Advocate thought Mother would benefit from having services reinstated, but agreed it was in J.A.'s best interest to stay with the foster parents. At the section 366.26 hearing in May 2020, Mother's counsel submitted and the court terminated her parental rights.

In June 2020, Mother filed a motion and section 388 petition to set aside the termination order, arguing she intended to contest termination. She contended she had been drug-free at Victory Outreach for 10 months, was in parenting classes, and wanted to "get [her] life in order" so she could recover custody. In addressing why the change would be better for J.A., she stated, "So he would not be adopted and I could show I have rehabilitated myself . . . ."

The Department did not object to resetting the section 366.26 hearing, acknowledging there may have been confusion over pandemic-related restrictions, and the juvenile court set aside the termination order.

In August 2020, adoption social worker Sylvia Wendell filed a Department report on the section 388 petition, which recommended against return. Although Mother had negative drug tests in July 2020 and more visits, she did not complete substance abuse treatment, a psychological assessment, or counseling. The Victory Outreach program, which she had just finished, reported it was "not a treatment program, but rel[ied] on biblical guidance, prayer, bible studies, and atmosphere of God's love to affect [sic] change in a person's life." The Department noted it would also take time to assess if she could use the "tools she learned to continue with her sobriety

4

and parenting skills."[2]  Further, J.A. had a secure attachment with his foster parents, while Mother's minimal contact had not been sufficient to form a parent-child bond.

On October 27, 2020, the juvenile court heard Mother's section 388 petition and held the section 366.26 hearing.  Counsel agreed the section 388 petition encompassed the issue of return.  Mother, Wendell, Carmen Meza of Victory Outreach, and the foster mother testified.

Mother explained Victory Outreach was a home for her, and she was drug-free there.  She said that after she graduated, no social worker said she had to do a psychological assessment or counseling.  She now lived in an apartment with a roommate, and sent pictures to Wendell.  Since late September, she had worked on-call at a doughnut shop, and was trying to get her certified nurse assistant license reinstated.  Addressing J.A., she testified they have a secure attachment and a bond "words can't describe."  She confirmed she did not visit him until he was 11 months old, had four visits between late 2019 and early 2020, and had six Zoom and nine in-person visits since July 2020.  She said she requested more visits since August, but the Department allowed only one per week.  She also said she asked for overnight visits, and Wendell checked her apartment but did not let her know what happened.

Wendell testified that even as an adoptions social worker, her "job is still to look after the . . . best interest of the child . . . ."  She did not have concerns "[a]t this point" in time about Mother's sobriety.  However, she needed to know if Mother was going to be able to provide for J.A.  The church

---

2    The parties use the word "sobriety" to refer to being drug-free, so we use the term too for clarity.  Alcohol is not at issue.

provided her apartment rent-free, and she queried if it was "going to put additional stress on her when she's out of that home." She also questioned if her job was stable enough, and noted it "might take months, maybe even a year" to reinstate her nurse assistant license. Wendell said she did ask Mother to do a psychological assessment in June and July 2020, and she "did not decline, but she didn't do it." She further testified Mother's visits with J.A. went well, but there was "no attachment," and the foster parents "are the only parents he has known." She opined moving him would be "very traumatic." She also addressed the overnight visits, explaining in part they have to assess the space and other residents and Mother requested them a month prior.

The juvenile court also heard from Meza and foster mother L.S. Meza was the pastor's wife at Victory Outreach, and a former director there. She saw Mother and J.A. at four or five visits, and said "[t]here was a bond . . . ." L.S. testified J.A. called her "mom" or "mommy," and she viewed him as part of the family. There were seven people in her home: her and her husband O.S., their biological son and adopted daughter, two other foster children, and J.A.

The juvenile court denied the section 388 petition. The court recognized Mother had "made great strides" and was "on the right track." But it was concerned Victory Outreach was not a drug treatment program, and found this implied "circumstances may be changing as opposed to having completely changed." The court also found it important that she had only been out of the program a few months, noting her addiction went back to 2004 and "there are a lot of challenges to live . . . free of a rehabilitation program." The court was "not completely satisfied" that circumstances had changed. The court then stated, "ultimately this is a case where we have

6

concerns about the best interest of the child . . . ." The court found J.A. had been in the foster home for almost two years, and although he clearly enjoyed visits with Mother, the foster mother "fulfilled the actual role of mother throughout [his] life . . . ." The court also found it "unfortunate . . . there wasn't more visitation early on, but that is critical," pointing out there were "just a few visits" and most in "the last few months."

The juvenile court terminated Mother's parental rights, and set a permanent plan of adoption. The court explained "the parent must establish that the benefit to the child of maintaining the parent/child relationship outweighs the benefit of adoption, and, on this record, I cannot make that conclusion."

On November 13, 2020, Mother filed a notice of appeal from the "10/26/2020 [] Termination of my Parental Rights," using the Judicial Council of California form (JV-800). She checked the box for 366.26 and here identified the date as "10/05/2020"; she did not check the box for "[o]ther appealable orders relating to dependency." Mother later filed a motion to construe the notice of appeal to encompass the section 388 petition, and correct the date. We directed the parties to brief the appealability and merits of the section 388 ruling.

DISCUSSION

I.    *Appealability*

"A notice of appeal 'is sufficient if it identifies the particular judgment or order being appealed.' " (*In re Joshua S.* (2007) 41 Cal.4th 261, 272; see Cal. Rules of Court, rule 8.405(a)(3).) However, " 'notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent

7

could not possibly have been misled or prejudiced.' " (*Joshua S.*, *supra*, at p. 272.; rule 8.405(a)(3).)

Applying a liberal construction to the notice of appeal here, we conclude it is reasonably clear the notice encompasses the order denying Mother's section 388 petition. (*In re Madison W.* (2006) 141 Cal.App.4th 1447, 1450-1451 [construing notice of appeal referencing parental rights termination order to include order denying section 388 petition]; *In re Angelina E.* (2015) 233 Cal.App.4th 583, 585, fn. 2 [same].) The court issued both the order terminating Mother's parental rights and the order denying the section 388 petition on the same date, which she attempted to identify in the notice of appeal (and later corrected in her motion to construe the notice). (See *In re Daniel Z.* (1992) 10 Cal.App.4th 1009, 1017 ["[l]iberal construction is particularly appropriate here because the jurisdictional finding and dispositional order were rendered simultaneously on . . . the date specified in the notice of appeal"].) Further, the Department concedes we should reach the section 388 petition, and addressed the merits in its brief.[3]

We conclude we have jurisdiction to consider Mother's challenge to the juvenile court's section 388 order, and proceed to the merits of her appeal.

II.    *Analysis*

Under section 388, any person having an interest in a dependent of the juvenile court may petition to change, modify, or set aside a prior order of the

---

[3]    Both parties note *In re A.R.*, a California Supreme Court case involving untimely notices of appeal in dependency cases that was pending when briefing commenced here and has since been decided. (*In re A.R.* (2021) 2021 Cal. LEXIS 2407, at *18 [parent may assert incompetent representation claim based on untimely notice of appeal].) Having determined liberal construal is appropriate, we need not address whether or how *A.R.* would apply here.

court. (§ 388, subd. (a)(1).) The petitioner bears the burden of showing: (1) there has been a change of circumstance or new evidence; and (2) the modification is in the child's best interests. (*Id.*, subds. (a)(1) & (d); *see In re A.A.* (2012) 203 Cal.App.4th 597, 611 (*A.A.*).)

After "reunification services are ordered terminated, the focus shifts to the needs of the child for permanency and stability." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309; see *ibid.* [§ 388 "provides the 'escape mechanism' . . . to allow the court to consider new information."].) A court "hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interests of the child." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317 (*Stephanie M.*).)

A petition under section 388 "is addressed to the sound discretion of the juvenile court, and its decision will not be overturned on appeal in the absence of a clear abuse of discretion." (*A.A.*, *supra*, 203 Cal.App.4th at p. 612.) In ruling on a modification petition, the court may consider the entire factual and procedural history of the case. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.)

On the record before us, we conclude the juvenile court did not abuse its discretion in denying Mother's section 388 petition. She focuses on her recent sobriety, housing, and work, and her progress is commendable. But the court's concern that circumstances had not yet changed was well-founded. Although Mother was sober at Victory Outreach and for the few months since, she had a long, serious history of drug use. She had not yet maintained sobriety while dealing with rent and other stressors of living independently—much less while caring for a young child. Mother questions if it "matter[s] how she remedied the problem." It does. Victory Outreach was

9

not a substance abuse program, and she does not explain what techniques, if any, she acquired to manage sobriety and prevent relapse when stress arose. She also did not do the psychological assessment, which might have assisted with maintaining stability, and we disagree with her that mental health was a "non-issue."[4]

The cases Mother cites do not support a different result. (See, e.g., *In re Casey D.* (1999) 70 Cal.App.4th 38, 49 (*Casey D.*) [mother with "extensive drug history," and tendency to engage in required treatment and then relapse, showed only changing circumstances; although father's nine months of sobriety showed changed circumstances, return still was not in minor's best interests]; *In re S.S.* (2020) 55 Cal.App.5th 355, 364, 379-380 [petition alleged only that noncustodial father failed to provide, these allegations were later stricken, and he recently secured full-time job, obtained health care and childcare assistance, and attended counseling; finding that circumstances were "changing, not changed" was "too cavalier"].)

Even if we assumed Mother's recent sobriety constituted changed circumstances, the juvenile court could reasonably find J.A.'s best interests would not be served by return to her custody. She did not file her section 388 petition until June 2020, 10 months after services were terminated. By this point, J.A.'s need for permanency and stability was the paramount concern. (*Stephanie M.*, *supra*, 7 Cal.4th at pp. 317-318.) And returning him to Mother would have undermined—not promoted—his permanency and stability. J.A. was nearly two years old at the time of hearing, had lived with his foster family his entire life, and was thriving there. Indeed, social worker

---

[4]   Mother left one substance abuse program due to "severe anxiety," had a history of mental health diagnoses and prescriptions, and the psychological assessment and counseling were in her case plan.

Wendell testified moving him could be traumatic. In contrast, Mother did not start consistent visitation until July 2020 and had no overnight visits, and her requests for more visits came even later. And although Mother and Meza felt there was a bond between her and J.A., social worker Wendell disagreed, and the juvenile court could credit her testimony. (*Casey D.*, *supra*, 70 Cal.App.4th at p. 53.) We see no abuse of discretion (See *In re Zachary G.*, (1999) 77 Cal.App.4th 799, 808 [affirming denial of § 388 petition; no showing mother was immediately ready for custody or it was in child's best interests to be removed from only home he ever knew, to return to parent still at risk of regression].)

Mother's arguments to the contrary are unavailing. First, although she recognizes our focus is on permanency and stability, she contends recent authority also supports the continued use of the factors in *In re Kimberly F.* (1997) 56 Cal.App.4th 519 (*Kimberly F.*). (See *In re J.C.* (2014) 226 Cal.App.4th 503, 527 [declining to apply *Kimberly F.* factors, as they did not take *Stephanie M.* analysis into account]; *In re I.B.* (2020) 53 Cal.App.5th 133, 163 [trial court did not abuse discretion by also considering *Kimberly F.* factors as part of "holistic evaluation"; explaining *J.C.* court declined to apply them because parent there failed to address permanency and stability].)

Even if the *Kimberly F.* factors apply, they do not aid Mother. These factors are: "(1) [T]he seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to *both* parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*Kimberly F.*, *supra*, 56 Cal.App.4th at p. 532.)

For the first and third factors, Mother admits her substance abuse problem was serious and not easily fixed, but contends that by the hearing, she was "sober for over a year, had housing and a job, and had established consistent visitation with J.A." This argument fails to address the juvenile court's concerns regarding her failure to attend substance abuse treatment and comparatively recent sobriety, which we find valid for the reasons discussed above.

As for the second factor, Mother argues J.A. has a relationship with her, and although one could argue his bond with his caregivers was stronger, the court must do more than a "simplistic comparison . . . ." By any standard, this factor does not weigh in Mother's favor. She maintains there was evidence of bonding, citing social worker comments that visits went well, as well as her and Meza's view that she and J.A. were bonded. But the visits were belated and limited, Meza did not testify she had experience assessing parent-child bonding, and, again, the social worker disagreed. Mother also cites videos from a visit; at most, they show affection between her and J.A., not a bond. Mother also contends the grandparents and J.A.'s siblings would offer him an extended biological family, but she does not have custody of the siblings and the foster family would offer J.A. a large family environment as well.

Mother's reliance on *In re J.M.* (2020) 50 Cal.App.5th 833 is misplaced. (*Id.* at p. 837 [reversing denial of § 388 petition].) Although that mother struggled at first too, she eventually did "required domestic violence training" and stayed out of contact with the father "for over a year." (*Id.* at p. 846.) She also maintained weekly visits from the start, and had evidence, including from the social services department, that she was ready and able to care for the minor and their relationship was "blossoming." (*Id.* at pp. 838-840, 849.)

Here, Mother did not complete required substance abuse treatment, was sober on her own for only a few months, and the social worker had doubts she could care for J.A. and disagreed they had a bond. Further, while *J.M.* did note the extended biological family there, other factors supported return that do not exist here. (*Id*. at p. 849.)

Second, Mother also contends she can offer J.A. permanency and stability. This argument lacks merit, too. She first cites evidence she views as favorable to her, such as her and Meza's view that she and J.A. were bonded, and her sobriety, apartment, and job. She disregards other pertinent facts and essentially asks us to reweigh the evidence, which we will not do. (*See Stephanie M.*, *supra*, 7 Cal.4th at p. 319.) Mother also contends return would preserve J.A.'s relationship with his grandparents and siblings, citing their visits and positive interactions. We presume the juvenile court performed its duty and considered these facts to the extent relevant. (Evid. Code, § 664; see *In re Julian R.* (2009) 47 Cal.4th 487, 498-499.) It could still find J.A.'s interest in permanency and stability with his foster family outweighed the possibility of a future bond with his biological family. (Cf. *In re Aaron R.* (2005) 130 Cal.App.4th 697, 706 (*Aaron R.*) [§ 388 petition did not establish transfer to unfamiliar home was justified by preserving bond with older sibling], compare *Kimberly F.*, *supra*, 56 Cal.App.4th at pp. 522-523, 529 [noting interest in preserving existing family unit; older siblings remained with mother when minors were removed].)

Finally, Mother also appeals from termination of her parental rights. However, her sole argument is that if we reverse the denial of her section 388 petition, we must reverse the termination order. Given we are affirming the section 388 ruling, we reject this argument and will affirm the termination order as well. (Cf. *Aaron R.*, *supra*, 130 Cal.App.4th at pp. 706-707

13

[grandmother appealed from denial of § 388 petition and denial was affirmed; not reaching other permanency issues].)

DISPOSITION

The orders are affirmed.

McCONNELL, P. J.

WE CONCUR:

BENKE, J.

HUFFMAN, J.

14